MARC E. JOHNSON, Judge.
 

 ^Defendant, Cheri Hayden, appeals from her conviction for second degree murder. For the reasons that follow, we affirm.
 

 On May 1, 2008, a Jefferson Parish Grand Jury indicted defendant and co-defendant, Michael Coe, for second degree murder in violation of La. R.S. 14:30.1. Defendant pled not guilty and filed several pre-trial motions, including a motion to sever the defendants for trial that was denied. She and Coe proceeded to trial on July 18, 2009. After a three-day trial, a 12-person jury unanimously found defendant guilty as charged. The trial court sentenced defendant to life imprisonment without benefit of parole, probation, or suspension of sentence. Defendant timely appeals.
 
 [1]
 

 FACTS
 

 Around 1:30 p.m. on February 23, 2008, Tabitha Chiasson heard someone yelling for help in the parking lot of Laborie’s Supermarket in Marrero. She ran | stewards the yelling and observed a male leaning out of a truck trying to steal a woman’s purse. The woman, who was later identified as Patricia Landry, was still holding onto the purse’s strap, while the male was tugging on the purse. Ms. Chi-asson explained that it appeared the truck was being used as leverage, with the driver starting and stopping it. Fearing that the victim would be run over by the truck, Ms. Chiasson tried to pull Ms. Landry back while trying to push the male away and yelled for them to let go. The driver then cut the wheel causing the victim to fall. The victim was dragged underneath the truck where the truck’s back tire rolled over her back.
 

 Ms. Chiasson remained with the victim and told her to “hang on.” Nurses on the scene tried to revive the victim until an ambulance arrived, but the victim died. An autopsy revealed the 63-year-old victim died as a result of multiple blunt force injuries including rib fractures, collapsed lungs and a spinal fracture.
 

 
 *540
 
 When the police arrived, Ms. Chiasson was able to describe two of the truck’s occupants. She stated that the male holding the purse had a big mustache, brown hair, was dirty, and smelled bad. She described the driver as a dirty-looking, pasty-white, skinny female with long, strawberry-blonde hair, and green eyes. Ms. Chiasson believed there was someone else in the back of the truck but was unable to see the person because of the tinted windows. She further noted there was no license plate on the bumper.
 

 The truck, described as a red Dodge Ram, quickly left the parking lot and passed near a seafood stand in the parking lot of Laborie’s. Bonnie Gras, who owned and worked at the seafood stand, had heard a lady screaming in the parking lot and saw the truck leaving. She explained that she initially believed the truck had gone over a speed bump, but later learned what had happened. Ms. Gras noted the truck pulled out of the parking lot so quickly, its wheels screeched as it turned |4the corner. She stated the truck’s passenger window was down and she was able to see the person in the passenger seat. Ms. Gras gave a description of the passenger to the police and indicated she thought she recognized him as having accompanied one of her customers, Roy Williams, to her seafood stand two or three times in the past. She further described a female occupant of the truck as having long dirty blonde hair.
 

 Shortly after the truck left the Laborie’s parking lot, a 9-1-1 call was made by Connie Dutreil in connection with an automobile accident she had with a red Dodge Ram truck approximately four or five miles from Laborie’s. Ms. Dutreil stated the truck, driven by a female with two-tone blonde and brown hair, turned in front of her and the two vehicles slid into each other. She explained the truck took off and she followed it. She was able to give the 9-1-1 operator the temporary license plate number of the truck, which was located in its back window. As Ms. Dutreil followed the truck, she observed a black purse being thrown from the passenger side of the truck. Ms. Dutreil also observed the driver and passenger switch seats. Thereafter, the male driver put the truck in reverse, backed into Ms. Dutreil totaling her car, and then left. Ms. Du-treil subsequently looked inside the discarded purse for identification and found the victim’s name on several items in the purse.
 

 Based on Ms. Gras’ indication that she had seen the truck’s passenger with her customer, Roy Williams, the police interviewed Mr. Williams. Mr. Williams provided the police with three names, including co-defendant Coe’s name. Three photographic lineups were subsequently prepared and shown to Ms. Gras. She identified Coe from one of the lineups as the passenger of the truck. Ms. Chias-son, who helped the victim at the time of the purse snatching, also identified Coe from a photographic lineup as the passenger of the truck.
 

 | fiAfter Coe was identified, the police searched the computer records and databases and found a connection between Coe and defendant through a Field Interview Card that placed Coe and defendant together two weeks prior to the incident. The police prepared a photographic lineup with defendant’s photograph and showed it to Ms. Chiasson, who identified defendant as the female driver of the truck involved in the incident. Ms. Dutreil also identified defendant from the lineup as the driver of the truck with which she had her accident.
 

 An arrest warrant was obtained for defendant and she was arrested the next day at her residence. The residence was searched but nothing of evidentiary value
 
 *541
 
 was found. Defendant was subsequently advised of her rights and gave a taped statement. In her statement, defendant told the police that on the day of the incident she was at a party at 3:00 p.m., but did not specifically say what she was doing from 1:30 to 2:30 p.m. When confronted with Ms. Chiasson’s identification of her as the driver of the red Dodge truck, defendant denied it. When confronted with other inconsistencies, defendant ended discussions with the police.
 

 A third suspect, Matthew Vinet, was later identified based on the receipt of an anonymous call made to the Detective Bureau.
 
 [2]
 
 Vinet was the registered owner of the red Dodge Ram truck. The truck was subsequently located in the possession of a third party, who was cleaning the truck after Vinet had brought the truck to him. A search of the red truck revealed a black piece of plastic from the rear bumper that fit like a puzzle to a piece of plastic recovered from the car Ms. Dutreil was driving at the time of her automobile accident.
 

 According to Vinet, he had picked up defendant and Coe in his truck on the day of the murder after their car broke down. Vinet explained defendant took over driving because he and Coe were getting loaded smoking crack. He stated he got ¡ 6into the backseat behind the passenger’s seat and Coe was in the passenger’s seat. Vi-net stated that Coe wanted to get more crack, and they went to Laborie’s “[t]o make the deal.” He said that after Coe exited the truck, he heard screaming and saw Coe trying to grab someone’s purse. He said that he saw the woman running after Coe, but Coe got back into the truck with her purse. Vinet said they left the parking lot and wrecked with the same car twice, but at different locations. He also testified that Coe threw the purse out of the window. He further stated defendant and Coe later swapped seats, at which time Coe put the car in reverse and ran into the car that was behind them.
 

 Defendant testified at trial. She testified that she had spent the night with “Jill” the night before the murder. She stated she picked up Coe at approximately 7:30 a.m. and brought him back to Jill’s house. She stated she left Jill’s house around 12:30 or 12:45 p.m. and went home to get ready for her granddaughter’s birthday party, while Coe stayed at Jill’s house. Defendant testified she was home until about 2:40 p.m., at which time she left, picked up Coe in her own green car, and went to her granddaughter’s birthday parity-
 

 Defendant’s father testified she was home at 1:00 p.m. taking a bath and getting ready for the party. Defendant’s step-mother came home around 1:30 p.m. and testified that defendant was home at that time. She stated defendant left the trailer around 2:00 p.m. to go to the party. Defendant’s daughter testified defendant came to her house for the party between 1:30 and 2:00 p.m.
 

 Defendant denied any involvement in the incident at Laborie’s and denied being in a red truck on the day of the incident, but admitted she was dating Coe at the time.
 

 ASSIGNMENT OF ERROR
 

 [7In defendant’s sole assignment of error, she challenges the trial court’s denial of her motion to sever the defendants for trial. She argues the motion to sever should have been granted in order to ensure that her identification as a participant in the victim’s death was not based solely
 
 *542
 
 on her connection with Coe, the person who actually robbed and killed the victim. The State contends that defendant is precluded from raising the issue of severance on appeal because she is raising a new basis for the severance on appeal that was never presented to the trial court.
 

 In order to preserve an issue for appellate review, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for the objection. La.C.Cr.P. art. 841. It is well-established that a defendant is limited to the grounds for objection articulated at trial and a new basis for the objection may not be raised for the first time on appeal.
 
 State v. Cooks,
 
 97-999, p. 11 (La.9/9/98), 720 So.2d 637, 644, ceil
 
 denied,
 
 526 U.S. 1042, 119 S.Ct. 1342, 143 L.Ed.2d 505 (1999);
 
 State v. Taylor,
 
 04-346, p. 9 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 595.
 

 The record shows defendant and Coe made a joint pre-trial oral motion to sever defendants for trial. In the oral motion, defendants specifically argued:
 

 ... we have statements from each defendant, they don’t contradict each other. They’re both statements that are made to the police. They’re not in the classic sense saying that the other person did this and the other person did that. The statements contained herein are statements concerning alibis. TheyTe not exculpatory. I’m just once again doing this to — in an abundance of caution in case this was not raised and an appellate court would have this back for an evidentiary hearing in that I failed to do this.
 

 The State opposed the severance and the trial court tacitly denied the motion.
 

 On the second day of trial, counsel for defendant moved for a mistrial on the basis the defendants should have been severed for purposes of trial because the trial testimony had just revealed defendant and Coe’s statements were ^contradictory. Counsel noted that during the testimony of two officers, it was revealed there were conversations involving Coe that were not taped and not provided to the defense. Counsel further noted that Lt. Meunier had just testified that defendant and Coe’s statements were contradictory. Counsel stated that when he made his pre-trial motion to sever, he was not aware the statements were contradictory. The trial court denied the motion for a mistrial stating that the officer’s testimony was that defendant and Coe’s stories did not match, and not that their statements were antagonistic.
 

 On appeal, defendant claims the severance should have been based on her relationship with Coe so that she would not be convicted based simply on her association with Coe. The pre-trial motion to sever was made “out of abundance of caution” without assertion of any specific grounds for the motion, and the motion for mistrial relating to the severance made during trial was based on the allegation that defendant and Coe’s statements were contradictory. Since defendant did not object to the parties being tried together on the basis of her personal relationship with Coe, the argument pertaining to the severance on that ground is not properly before this Court for review. However, defendant did move for a mistrial on the basis a severance should have been granted because Coe and her statements were allegedly inconsistent. Therefore, we will address the issue regarding whether a severance should have been granted on the basis of allegedly inconsistent statements between the defendants.
 
 See State v. Addison,
 
 08-461, p. 16 (La.App. 5 Cir. 2/10/09), 8 So.3d 707, 718.
 

 Louisiana Code of Criminal Procedure article 704 provides the following regarding severance:
 

 
 *543
 
 Jointly indicted defendants shall be tried jointly unless:
 

 (1) The state elects to try them separately; or
 

 |fl(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.
 

 Whether justice requires a severance must be determined by the facts of each case.
 
 State v. Prudholm,
 
 446 So.2d 729, 741 (La.1984);
 
 State v. Condley,
 
 04-1349, p. 14 (LaApp. 5 Cir. 5/31/05), 904 So.2d 881, 890, writ
 
 denied,
 
 05-1760 (La.2/10/06), 924 So.2d 163. A defendant is not entitled to a severance as a matter of right, but the decision is one resting within the sound discretion of the trial court. A denial of a motion to sever will not be overturned absent a clear abuse of discretion.
 
 Id.
 

 A severance is necessary if the defenses of the co-defendants are mutually antagonistic to the extent that one co-defendant attempts to blame the other, causing each defendant to defend against both his co-defendant and the State.
 
 Prudholm,
 
 446 So.2d at 741;
 
 Condley,
 
 04-1349 at 15, 904 So.2d at 890. The defendant bears the burden of proof in a motion to sever.
 
 State v. Jackson,
 
 03-883, p. 16 (La.App. 5 Cir. 4/27/04), 880 So.2d 841, 851-52, writ
 
 denied,
 
 04-1399 (La. 11/8/04), 885 So.2d 1118.
 
 [3]
 
 The mere unsupported allegation that defenses will be antagonistic is not sufficient to require a severance.
 
 Prudholm,
 
 446 So.2d at 741. Reversal of a conviction for failure to sever where antagonism is shown is not always mandated unless prejudice can be shown.
 
 State v. Cedrington,
 
 98-253, p. 24 (LaApp. 5 Cir. 12/16/98), 725 So.2d 565, 577,
 
 writs denied,
 
 99-190 (La.6/4/99), 743 So.2d 1249 and 99-431 (La.6/25/99), 745 So.2d 1182. Antagonistic defenses are not the only instances where the denial of a motion to sever will constitute an abuse of discretion. Where the ends of justice will be best served by severance, it should be granted.
 
 Id.
 

 |inThe record shows that defendant admitted that Coe and her statements were not antagonistic and there is no evidence to the contrary. Both defendant and Coe denied any involvement in the incident and did not blame the other. Defendant argued that the inconsistencies in the statements resulted in antagonistic alibis. Coe’s statement, as presented at trial, was that he was with defendant the entire day. However, defendant’s testimony and statement differed by suggesting that at least part of the day, the time that the incident occurred, she was not with Coe but rather was at her parent’s house without him.
 

 We find defendant failed to demonstrate how she was prejudiced by the denial of the severance. Although defendant’s statement and testimony indicate she was not with Coe the entire day, while conversely Coe indicated he was with defendant the entire day, defendant fails to demonstrate she was prejudiced by this inconsistency. Regardless of the alibis of defendant and Coe, defendant was placed at the scene of the incident, at the time of the incident, by three State witnesses: Ms. Chiasson, Ms. Dutreil, and Vinet. Thus, we do not find justice required a severance or that the trial court abused its discretion in denying the motion to sever or motion for mistrial based on the severance issue.
 

 
 *544
 

 ERRORS PATENT
 

 We reviewed the record for errors patent in accordance with La.C.Cr.P. art. 920,
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975), and
 
 State v. Hicks,
 
 08-402, p. 13 (La.App. 5 Cir. 12/16/08), 3 So.3d 539, 547, and found no errors that warrant correction.
 

 For the reasons stated above, defendant’s conviction and sentence for second degree murder are affirmed.
 

 AFFIRMED
 

 [1]
 

 . Co-defendant, Michael Coe, filed a separate appeal that bears docket number 09-KA-1012.
 

 [2]
 

 . Vinet was charged with accessory after the fact of second degree murder but later pled guilty to obstruction of justice.
 

 [3]
 

 . "When a severance is sought before trial, the standard for obtaining a severance is broader because of the speculation as to what the trial evidence will actually be; and after trial commences, the standard is stricter because at that time the trial judge is able to analyze the evidence which has actually been admitted.”
 
 State v. Foret,
 
 96-281, p. 34 (La. App. 5 Cir. 11/14/96), 685 So.2d 210, 224 n. 9.