CHEHARDY, C.J.
On appeal, defendant challenges the trial court's denial of his motion to sever his trial from that of his co-defendants. For the following reasons, we affirm.
Procedural History
On January 23, 2014, a Jefferson Parish Grand Jury indicted defendant, Tommie C. Molette a/k/a Tucker Molette, for the second degree murder of Deshon Evans, in violation of La. R.S. 14:30.1 (count one), and the attempted second degree murder *1084 of Jonquell Neal, in violation of La. R.S. 14:27 and La. R.S. 14:30.1 (count two).[1]
On May 22, 2017, trial commenced before a twelve-person jury.[2] After a six-day trial, the jury found defendant guilty as charged on both counts. On June 26, 2017, the trial judge sentenced defendant for second degree murder to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, and for attempted second degree murder, to imprisonment at hard labor for fifty years without benefit of parole, probation, or suspension of sentence, to run concurrently. Thereafter, defendant filed a timely notice of appeal, which was granted.
Facts
In this case, Tommie Molette, defendant-herein, is charged with second degree murder and attempted second degree murder for his involvement in a shooting incident that occurred on October 8, 2013 at 5923 Becker Street. The Hicks brothers - Kevin and Kevias - were also charged with second degree murder and attempted second degree murder for their involvement in the Becker Street incident.
In that same indictment, the grand jury also charged the Hicks and, their younger brother, Kedrick Anderson, with two counts of attempted second degree murder for their involvement in another shooting incident that occurred on July 13, 2013, at 2800 Mount Kennedy. Although defendant-herein was only indicted for the October Becker Street shootings, he and the Hicks brothers were tried at the same time.
For clarity and completeness in addressing defendant's assignments of error, this opinion includes all of the germane testimony elicited at trial regarding five shooting incidents connected by ballistics and/or testimony to two groups of people. The first incident occurred on June 22, 2013, when A.P. was fired on while driving his girlfriend, J.A.'s, vehicle. Testimony reflected that A.P. was targeted because he had been deemed a "rat."[3] Ballistics were not recovered from that event.
The second incident occurred on July 13, 2013, at approximately 9:45 p.m. at the *1085 Ridgefield Apartments on Mount Kennedy Drive in Marrero. During the Mount Kennedy incident, J., the two-year-old son of A.P. and J.A., was shot in the chest. J.A., the child's mother, testified that, "Kevias [Hicks'] face was the face in the front that I saw" shooting at her son and her that night. J.A. also saw Kedrick Anderson with a "big gun" that night. J.A. stated that she did not see Kevin Hicks that night.[4] Ballistics matched spent 9-mm shell casings recovered from the Mount Kennedy scene to two later shootings: the Bridge shooting and the Becker Street shooting.[5]
The third incident was a shooting that occurred on the Crescent City Connection on July 16, 2013. During that incident, Kevias Hicks was shot by someone riding in a nearby vehicle. Neither Kevias nor Kedrick Anderson, who was also in the car, would identify the assailant. However, J.A. testified that, at some point, A.P. told her that he and Kevias were shooting at each other on the "bridge." A spent 9-mm shell casing found inside the Hicks' vehicle matched the ballistics of casings found at the Mount Kennedy and Becker Street shootings.
In the fourth incident, which occurred on August 12, 2013, at the Beechgrove Apartments in Westwego, Aubrieon Davis, who is the mother of Kedrick Anderson's son, was fired upon by A.P. while she was driving. Subsequently, A.P. pled guilty to aggravated assault with a firearm on Aubrieon Davis for that incident. Ballistics from the .40 caliber casing recovered at Beechgrove matched a casing found in the roadway after the Bridge shooting on July 16, 2013.
Finally, the only shooting pertinent to defendant-herein occurred on October 8, 2013 at 5923 Becker Street in Marrero. The surviving victim, Jonquell Neal, testified that he and his friend, Deshon Evans, were recording rap music in a studio at Deshon's house, when they heard a knock at the front door. Evans opened the door to Kevin and Kevias Hicks, and defendant-herein, Tommie Molette. Neal remembered that when Kevias came to the door, he said something about running from another shooting where a child had been shot. After the men talked for a little while, they decided to record a song in Deshon's studio.
After they had been rapping and recording for a while in the studio, Neal heard Kevias say that he was a "god" and that "your life is in my hands." Neal was concerned but continued writing his song. When he heard a loud sound, Neal thought it was the music at first. But when Neal looked up, Evans' blood was all over him, and Evans was dead. Neal saw Kevin, Kevias, and defendant-herein shooting in Evans' direction. Neal saw defendant-herein shoot him in the leg.
Neal testified that, after he was shot, he picked up Evans' firearm from the floor, and put it in his lap. When Kevin tried to shoot him, Neal raised Evans' weapon, "let off a shot," and Kevin left. Neal stated that more than twenty-five or thirty shots were fired.
That night, Neal received four gunshot wounds in his shoulder, thigh, and "feet." Immediately after the shooting, Neal positively identified Kevin, Kevias, and defendant-herein as the shooters in photographic lineups. Neal further reported in his *1086 statement at the hospital to Sergeant Gary Barteet of the Jefferson Parish Sheriff's Office ("JPSO") that Kevias was shooting a 9-mm Smith and Wesson, that Kevin was using a 9-mm Beretta, and that defendant-herein was using a .40 caliber Colt. At trial, Neal testified that he was "100% sure" that Kevin, Kevias, and defendant-herein were the individuals who shot Evans and him that night.
Dr. Susan Garcia of the Jefferson Parish Forensic Center, who was accepted as an expert in the field of forensic pathology, conducted the autopsy on Deshon Evans. She explained that Deshon Evans' cause of death was multiple gunshot wounds,[6] including a lethal wound to the head, and that his manner of death was homicide.
Special Agent William Charles Williams of the FBI was accepted as an expert in the field of historical cell site analysis. Agent Williams analyzed historical records for two phone numbers - one associated with Kevin Hicks and one associated with defendant-herein - for the early morning hours of October 8, 2013. According to Agent Williams, both phones utilized the cellular phone tower nearest to 5932 Becker Street numerous times between 1:04 a.m. and 1:41 a.m. Williams testified that further data was consistent with both phones leaving the area around Becker, traveling along the Westbank Expressway, over the Mississippi River via the Crescent City Connection, and traveling north to the New Orleans East area. Williams testified that both phones were utilizing the nearest tower to 7840 Mills Avenue in New Orleans East between 2:52 a.m. and 2:54 a.m. The Mills Avenue address in New Orleans is associated with the Hicks' mother.
In order to connect the incidents, the State presented evidence regarding spent cartridge casings recovered at the scenes of the Mount Kennedy, the Beechgrove, the Bridge, and the Becker Street shootings. JPSO Deputy Jené Rauch, who is the supervisor of the firearms and tool mark section for the JPSO Crime Lab, was accepted as an expert in the field of firearm and tool mark examination.
Deputy Rauch testified that, after the July 13, 2013 Mount Kennedy shooting, fourteen casings that were fired "in the same" 9-mm weapon were recovered. Further, 2 casings were recovered that had been fired from a second 9-mm firearm. Also, eight 7.62 by 39-mm caliber casings were recovered that were all fired "in the same weapon." Finally, one .45 caliber casing was found on the scene.
Deputy Rauch testified that, after the July 16, 2013 shooting on the Crescent City Connection Bridge, two casings were recovered: a 9-mm casing recovered from inside of the Hicks' vehicle and a .40 caliber casing recovered from the roadway of the Bridge. Ballistics revealed that the .40 caliber casing at Beechgrove was fired from the same .40 caliber pistol used during the shooting on the Bridge that injured Kevias Hicks.
Deputy Rauch further testified that, after the Becker Street shootings in October of 2013, eight 9-mm casings were recovered that were fired from the same 9-mm pistol. Next, four 9-mm casings were recovered *1087 that were fired from a second 9-mm pistol. Further, thirteen casings fired from a .40 caliber pistol were recovered. Finally, a .45 caliber Taurus pistol was recovered from the scene but ballistics confirmed that it was damaged by a bullet during the shooting, which prevented it from firing that night.
Deputy Rauch testified that the ballistics database used by law enforcement connected the same 9-mm firearm to four shootings: Mount Kennedy on July 13, 2013; the Bridge Shooting on July 16, 2013; the Becker Street shooting on October 8, 2013; and a homicide at I-10 and Clearview Parkway on December 30, 2013. At Mount Kennedy, fourteen 9-mm rounds were shot from this weapon. After the Bridge shooting, one expended 9-mm casing from this weapon was found on the floor of the interior of the vehicle driven by the Hicks brothers that night. At Becker Street, eight 9-mm rounds were shot from this weapon. Finally, three casings fired from this weapon were found at the Clearview/I-10 homicide but further investigation revealed that the December homicide was not linked to the instant crimes.[7]
JPSO Deputy Chief Timothy Scanlan, who is the Commander of the Technical Services Bureau, was accepted as an expert in the fields of firearms and tool mark examination, blood stain pattern analysis, and crime scene reconstruction. Deputy Chief Scanlan investigated the Mount Kennedy and Becker Street crime scenes and formulated conclusions. Deputy Chief Scanlan asserted that Jonquell Neal's testimony was consistent with the cartridge case distribution and the angles of fire at the Becker Street crime scene. He also asserted that after reviewing reports of the Mount Kennedy scene, what he found there was consistent with the description of events provided by J.A.
After hearing the testimony and evidence, the twelve-person jury found defendant-herein guilty of the second degree murder of Deshon Evans and the attempted second degree murder of Jonquell Neal. Defendant-herein appeals his convictions.
Discussion [8]
On appeal, defendant raises four assignments of error: first, the trial court erred in denying the motion to sever; second, the trial court erred in denying the re-urged motion to sever and motion to quash; third, the trial court erred in denying the re-urged motion to quash and motion for mistrial; and fourth, the trial court erred in denying the motion for new trial.
In each of his assignments, the crux of defendant's argument is that, given the voluminous evidence of violent acts allegedly committed by the Hicks brothers without him, defendant-herein was prejudiced by trial of his charges for the October 8, 2013 Becker Street crimes with the unrelated charges for the July 13, 2013 Mount Kennedy shootings against the Hicks brothers. Defendant alleges that the trial judge erred in denying his motion to sever filed well before trial, his re-urged motion to sever filed immediately before trial began, and his motion to quash and motion for mistrial filed after the first full day of trial. Further, defendant alleges that the trial judge erred in denying his motion for new trial based on prejudice to him that resulted from the voluminous evidence of violent acts allegedly committed by Kevin and Kevias.
*1088 The State responds that the trial court did not err in denying defendant's request for severance from his co-defendants because the law is clear that where co-defendants are jointly charged, they need not be charged in every count. Further, the State avers that defendant cannot prove that he was prejudiced. The State contends that the jury clearly understood that defendant was only charged in the Becker Street shooting.
Motion to Sever
On June 16, 2016, defendant filed a Motion to Sever Defendants for Trial on the basis that he was not charged with the crimes that occurred on July 13, 2013. He also argued that if defendants were all tried together, the jury would be confused as to his involvement. Defendant alleged that his right to a fair trial was impinged because he was sitting as a defendant for uncharged crimes.
On June 24, 2016, at the hearing on the motion to sever, defense counsel argued that defendant-herein was only charged with the Becker Street shootings and had no connection with the Mount Kennedy shootings. Defense counsel contended that the State was going to bring in evidence of prior acts that had nothing to do with defendant-herein. For that reason, counsel contended that it would be prejudicial for defendant-herein to appear before a jury to defend himself for uncharged acts.
The prosecutor averred that the surviving witness of the Becker Street shootings would testify that Kevias gained entry to Becker Street for himself and the co-defendants by saying that they were on the run from the police for the Mount Kennedy shooting. Although defense counsel disagreed with that description of events, the prosecutor still maintained that the statement allowed the trio to gain admittance to Becker Street on the night in question.
After hearing arguments of counsel, the trial judge denied the motion to sever, stating:
In looking at the Bill of Indictment, I think it is clear and certainly can be made clear for the jury that the separate incidences that are indicted here they can clearly distinguish. I don't think there is any undo-prejudice [sic] to Mr. Molette sitting through a trial where there is evidence put on of his co-defendants involved in a separate incidence [sic] anymore prejudicial than the fact that he already himself is charged with two counts in this bill of indictment. So again, the Court denies motion to sever.
Defense counsel objected and sought review of that ruling with this Court. This Court denied the writ, stating:
Relator, Tommie Mollette, seeks review of the trial court's June 24, 2016 denial of his motion to sever defendants for trial. Relator failed to attach a copy of his motion to sever that was filed with the trial court, but argues in his writ application that his motion was based on undue prejudice. He claims that his co-defendants, Kevin Hicks and Kevias Hicks, were charged with two additional counts of attempted murder (counts three and four) that occurred three months prior to the charged offenses of second degree murder and attempted second degree murder (counts one and two) against Relator. Kevin and Kevias were also charged in counts one and two, for a total of four charges against them, whereas Relator only faces two charges (counts one and two). Relator asserts a severance is warranted because a jury would be hostile towards him because evidence of the other attempted murders, in which he had no participation, will be admitted against his co-defendants.
*1089 After a hearing in which no evidence was presented, the trial court denied the motion to sever and found that, at this time, the separate charges against all defendants could be clearly distinguished and made clear for the jury. The trial court found no undue prejudice in requiring Relator to sit through a trial where evidence of his co-defendants' involvement in a separate incident would be admitted. Jointly indicted defendants are to be tried jointly unless the court finds that justice requires a severance. La. C.Cr.P. art. 704. Whether justice requires a severance must be determined by the facts of each case. State v. Hayden , 09-954 (La. App. 5 Cir. 5/11/10), 41 So.3d 538, 543. The ruling on a motion to sever is within the sound discretion of the trial court and will not be overturned unless it is manifestly erroneous and injurious to the defendant. State v. Tennant , 352 So.2d 629, 634 (La. 1977). Upon review of the writ application and the transcript of the motion hearing, we do not find the trial court abused its discretion in denying Relator's motion to sever the trial of defendants at this time. Accordingly, on the showing made, we do not find Relator is entitled to relief and deny his writ application.
State v. Molette , 16-K-457 (La. App. 5 Cir. 8/24/16)(unpublished writ disposition).
On May 22, 2017, the first day of trial, defendant-herein filed a Motion to Quash Indictment alleging misjoinder of offenses and misjoinder of defendants. The trial judge again denied the motion to sever as to defendant-herein because he was charged with a murder and an attempted murder in the October shootings, which were clearly distinct from the July incident.
The State responded that this issue had been previously addressed by the trial judge in his denial and by this Court in its writ denial.[9] The State reiterated that the jury could distinguish between the separate victims and the separate incidents. After hearing arguments of counsel, the trial judge denied the motion to quash the indictment, stating:
It remains the Court's belief that the indictment, as it stands, the evidence that will be presented against Mr. Molette is easily distinguishable by the jury where he is charged with a crime that occurred or crimes that occurred, counts that occurred in October and not with the ones that are charged - - that the Hicks are charged with - - the Hicks defendants are charged with in July. And I think it's easy for the jury to compartmentalize those in their mind and certainly he has abled counsel here to ensure that the jury recalls he is only charged with the one count of murder and then the attempted murder that occurred in the October incident. So for all those reasons, the Court denies the Motion to Quash.
Defense counsel noted his objection.
After the first full day of testimony, defense counsel re-urged his motion to *1090 quash and moved for a mistrial on the basis of misjoinder of defendants and misjoinder of the counts. He stated that only one of the seven witnesses called during one day of trial testified regarding defendant-herein. He also stated that there was emotional testimony by J.A. and that some of the jurors "teared up" when pictures of the child victim were shown. Defense counsel argued that was "purely prejudicial" to his client, and moved for a mistrial. The prosecutor responded that the issue had already been addressed several times. Further, of the nineteen upcoming witnesses, sixteen would be about the Becker Street shootings, which was a majority of the witnesses in the case.
The prosecutor asserted that it was very clear that defendant-herein was not charged with any of the other shootings and that no evidence would improperly associate him with his co-defendant's other charges. Further, each witness' testimony would be clear as to what scene, date, and crimes were involved. The prosecutor stated that, although the jury was emotional, he was confident that the jury would be able to separate the charges and the defendants. Defense counsel noted that the jury was looking at all three defendants with "very stern looks."
After hearing arguments of counsel, the trial judge denied the motion to quash, stating:
There was extensive voir dire going on during the jury selection process, Mr. Vedros, as well as all counsel involved had an opportunity to voir dire the jurors. The Court is comfortable that the jurors that we have selected is [sic ] more than capable, and as this Court obviously intends to do and will do in the instructions will instruct them that they are only to consider the evidence against Mr. Molette that is presented as it relates to the October incident. Again, the Court is comfortable that the level of voir dire, extensive voir dire, on that issue throughout the jury selection process and therefore, the motion is denied.
Defense counsel noted his objection.
La. C.Cr.P. art. 493 permits the joinder of offenses if the offenses charged "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan," and the offenses are triable by the same mode of trial.
La. C.Cr.P. art. 494 provides the law regarding joinder of defendants:
Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.
La. C.Cr.P. art. 495 provides that, "[t]he objections of misjoinder of defendants or misjoinder of offenses may be urged only by a motion to quash the indictment." La. C.Cr.P. art. 532 provides in pertinent part that a motion to quash may be based on one or more of the following grounds:
* * * *
(3) The indictment is duplicitous or contains a misjoinder of defendants or offenses. In such case the court may permit the district attorney to sever the indictment into separate counts or separate indictments.
A defendant properly charged in the same indictment with two or more offenses pursuant to La. C.Cr.P. art. 493 may nonetheless move for a severance of the offenses under La. C.Cr.P. art. 495.1, which provides as follows:
*1091 If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
In determining whether prejudice results from a joinder of offenses, the trial court must consider the following factors: whether the jury would be confused by the various counts, whether the jury would be able to segregate the various charges and evidence, whether the defendant would be confounded in presenting his various defenses, whether the crimes charged would be used by the jury to infer a criminal disposition, and whether, considering the nature of the charges, the charging of several crimes would make the jury hostile. State v. Fontenberry , 09-127 (La. App. 5 Cir. 10/27/09), 27 So.3d 904, 909-10, writ denied , 09-2665 (La. 5/28/10), 36 So.3d 246. In addition, it must be considered that prejudice from the joinder of offenses can be mitigated by clear jury instructions and by an orderly presentation of evidence by the State. State v. Davis , 12-512 (La. App. 5 Cir. 4/24/13), 115 So.3d 68, 84, writ denied , 13-1205 (La. 11/22/13), 126 So.3d 479.
A defendant alleging a prejudicial joinder of offenses has a heavy burden of proof. Motions to sever under La. C.Cr.P. art. 495.1 are within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent an abuse of discretion. Factual, rather than conclusory, allegations are required when the defendant alleges prejudicial joinder of offenses on a motion to sever. State v. Fontenberry , 27 So.3d at 910. Finally, there is no prejudicial effect from joinder of offenses when the evidence of each is relatively simple and distinct, so that the jury can easily keep the evidence of each offense separate in its deliberations. State v. Butler , 15-89 (La. App. 5 Cir. 7/29/15), 171 So.3d 1283, 1288, writ denied , 15-1608 (La. 10/10/16), 207 So.3d 408. In ruling on such a motion, the trial court must weigh the possibility of prejudice to the defendant against the important considerations of economical and expedient use of judicial resources. State v. Deruise , 98-0541 (La. 4/3/01), 802 So.2d 1224, 1232, cert. denied , 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001).
La. C.Cr.P. art. 704 provides the following regarding severance:
Jointly indicted defendants shall be tried jointly unless:
(1) The state elects to try them separately; or
(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.
Whether justice requires a severance must be determined by the facts of each case. State v. Prudholm , 446 So.2d 729, 741 (La. 1984) ; State v. Condley , 04-1349 (La. App. 5 Cir. 5/31/05), 904 So.2d 881, 890, writ denied , 05-1760 (La. 2/10/06), 924 So.2d 163. A defendant is not entitled to a severance as a matter of right, but the decision is one resting within the sound discretion of the trial court. A denial of a motion to sever will not be overturned absent a clear abuse of discretion. Id.
A severance is necessary if the defenses of the co-defendants are mutually antagonistic to the extent that one co-defendant attempts to blame the other, causing each defendant to defend against both his co-defendant and the State. Prudholm , 446 So.2d at 741 ; Condley , 904 So.2d at 890. The defendant bears the burden of proof in a motion to sever. State v. Jackson , 03-883 (La. App. 5 Cir. 4/27/04), 880 So.2d 841, 851-52, writ de nied *1092 , 04-1298 (La. 10/29/04), 885 So.2d 585. The mere unsupported allegation that defenses will be antagonistic is not sufficient to require a severance. Prudholm , 446 So.2d at 741. Reversal of a conviction for failure to sever where antagonism is shown is not always mandated unless prejudice can be shown. State v. Cedrington , 98-253 (La. App. 5 Cir. 12/16/98), 725 So.2d 565, 577, writs denied , 99-190 (La. 6/4/99), 743 So.2d 1249 and 99-431 (La. 6/25/99), 745 So.2d 1182. Antagonistic defenses are not the only instances where the denial of a motion to sever will constitute an abuse of discretion. Where the ends of justice will be best served by severance, it should be granted. Id.
Prejudice may occur in a joint trial "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." State v. Williams , 16-417 (La. App. 5 Cir. 8/30/17), 227 So.3d 371, 395 (quoting Zafiro v. United States , 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) ). In Williams, this Court found that the fact that the defendant did not participate in the murder of Donte Hall, a charge for which only his co-defendant was indicted, was not a consideration for the trial court in determining whether a severance was required. Williams , 227 So.3d at 395.
A mistrial is a drastic remedy and is warranted only when trial error results in substantial prejudice to defendant that deprives him of a reasonable expectation of a fair trial. Whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed absent an abuse of discretion. State v. Pierce , 11-320 (La. App. 5 Cir. 12/29/11), 80 So.3d 1267, 1271.
Upon review, we find that the trial judge did not err by denying the Motion to Sever the Counts.[10] Here, the counts were not misjoined under Article 493 since they were of the same or similar character as they all involved shootings. Also, the evidence revealed that the shootings were part of a common scheme or plan because the defendants gained entrance to the Becker Street address by indicating that they were on the run from the Mount Kennedy shooting.
Further, defendant did not meet his heavy burden of proving prejudicial joinder under La. C.Cr.P. art. 495.1. At trial, the evidence of each crime was presented in an orderly fashion and the record does not reflect that the jury was confused by the various counts or that defendant was confounded in presenting his defense.
Additionally, the trial judge charged the jury separately as to each offense, explaining in detail what the State was required to prove with respect to each count. The jury was instructed to consider each charge against each defendant for each victim separately. Further, the jury was provided with separate verdict sheets for each defendant and each victim.[11] Here, *1093 the jury was able to segregate the various charges and evidence as it returned not guilty verdicts for Kevin Hicks on the Mount Kennedy shootings but guilty on the Becker Street shootings. See State v. Seay , 521 So.2d 1206, 1210 (La. App. 2nd Cir. 1988) ("if the jury can keep the evidence of the offenses separate and distinct, as evidenced by acquittal on some and conviction on other charges, there is no prejudice.")
Accordingly, we find that these offenses did not warrant a severance and that the trial judge did not abuse his discretion in denying the motion to sever the counts.
Further, we find that the trial judge did not err by denying the Motion to Sever Defendants. Here, defendants - Kevin, Kevias, and Molette - were not misjoined under La. C.Cr.P. art. 494 since they were alleged to have participated in the same act constituting the offenses committed at Becker Street and that Kevin and Kevias were not misjoined under that same statute as they were alleged to have participated in the same act constituting the offenses committed at Mount Kennedy. Also, the State presented sufficient evidence to establish a link between the Becker Street shootings and the Mount Kennedy Street shootings. As such, if each offense were tried separately, the evidence of the related offense could have been admissible at both trials.
Moreover, there is no evidence that the defenses of the co-defendants were mutually antagonistic to the extent that one co-defendant attempted to blame another one. Moreover, defendant has not shown how he was prejudiced by the lack of a severance. Further, as was discussed above, the jury was instructed to consider each charge for each victim separately, was provided with separate verdict sheets for each defendant and each victim, and was able to segregate the various charges and evidence. SeeState v. Seay, supra .
At trial, approximately thirty witnesses testified regarding the two charged and three related offenses. Numerous witnesses and the overlapping nature of the facts leading to these charges necessitated the joint trial of the defendants to present a cohesive narrative for the jury. Piecemeal litigation is not sanctioned by the courts, and where the same witnesses would be called to testify, judicial economy dictates that there be one trial. Williams , 227 So.3d at 395 (citing Warren v. Bergeron , 599 So.2d 369 (La. App. 3rd Cir. 1992), cert. denied , 604 So.2d 995 (La. 1992) ). Thus, we find that the trial judge did not abuse his discretion in denying defendant's Motion to Sever Defendants.
Finally, in light of the foregoing discussion, there is no evidence of trial error resulting in substantial prejudice to defendant that deprived him of a reasonable expectation of a fair trial. See Pierce , supra . Accordingly, because we find no error in the trial court's denial of defendant's motion to sever either counts or defendants, we additionally find that the trial court did not abuse its discretion in denying the motion for mistrial based on misjoinder of defendants or offenses.
Finally, after his convictions, defendant filed a Motion for New Trial on the basis that he received an unfair trial because of the misjoinder of offenses and defendants.
*1094 He added that there was "404(B)" information and incidents that came out during the trial which did not involve him at all. The trial judge denied the Motion for New Trial, stating:
In terms of - - and obviously, it was argued pretrial. It was appealed pretrial, the whole issue of the joinder. And I think that the jury's verdict is clearly illustrative of the fact that there was no prejudice to Mr. Molette, that the jury certainly understood exactly what it was that they were hearing. That is evidenced by the fact that Mr. Kevin Hicks was in fact found not guilty on two of the two [sic] of the attempted murder charges with which he was charged which were from a separate incident from the murder and attempted murder charges that Mr. Molette had.
With regard to the motion to new trial as it relates to Tommy Molette, again, I think the jury's verdict is illustrative of the fact and this Court has every confidence that the jury was able to keep separate the incidents and therefore, the Court denies the motion for new trial as it relates to Mr. Molette.
Defense counsel objected to the trial judge's ruling.
The motion for a new trial is based on the supposition that injustice has been done the defendant, and unless such is shown to have been the case, the motion shall be denied, no matter upon what allegations it is grounded. La. C.Cr.P. art. 851(A). The decision on a motion for a new trial rests within the sound discretion of the trial judge, and his ruling will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Delagardelle , 06-898 (La. App. 5 Cir. 4/11/07), 957 So.2d 825, 829, writ denied , 07-1067 (La. 11/21/07), 967 So.2d 1154.
For the reasons already discussed, we find that the trial court did not abuse its discretion by denying the Motion for New Trial based on the misjoinder of defendants and offenses. Accordingly, we find no merit to defendant's assignments of error.
Errors patent
As is our routine practice, we have reviewed the record for errors patent, according to La. C.Cr.P. art. 920 ; State v. Oliveaux , 312 So.2d 337 (La. 1975) ; and State v. Weiland , 556 So.2d 175 (La. App. 5th Cir. 1990).
We note that neither the transcript nor the commitment reflects that the trial judge advised defendant of the provisions of La. C.Cr.P. art. 930.8. It is well settled that, if a trial court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, this Court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief. See State v. Neely , 08-707 (La. App. 5 Cir. 12/16/08), 3 So.3d 532, 538, writ denied , 09-0248 (La. 10/30/09), 21 So.3d 272.
Accordingly, we advise defendant by way of this opinion that no application for post-conviction relief, including applications which seek an out-of time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922. Based on the foregoing, defendant's convictions and sentences are hereby affirmed.
AFFIRMED .

In the same bill of indictment, the grand jury also indicted Kevias C. Hicks and Kevin Hicks with second degree murder (count one) and attempted second degree murder (count two). Further, in that same indictment, the Jefferson Parish District Attorney also charged Kedrick Anderson ("Anderson"), Kevias, and Kevin with attempted second degree murder of a known juvenile (hereinafter "J.") and attempted second degree murder of his mother, J.A., in violation of La. R.S. 14:27 and La. R.S. 14:30.1 (counts three and four respectively). The co-defendants all have appeals pending before this Court: State v. Kevin Hicks , 17-696 (La. App. 5 Cir. 10/17/18), 258 So.3d 1050, 2018 WL 5020887 ; State v. Anderson , 18-45 (La. App. 5 Cir. 10/17/18), 258 So.3d 1008, 2018 WL 5020643 ; and State v. Kevias C. Hicks , 18-46 (La. App. 5 Cir. 10/17/18), 257 So.3d 1283, 2018 WL 5020291.
Further, throughout this opinion, we will use the juvenile victim's and his family's initials to protect the identity of the juvenile crime victim. La. R.S. 46:1844(W)(3). The minor will be referred to by his first initial, J., and his mother will be referred to by her initials, J.A. See State v. Lirette , 11-1167 (La. App. 5 Cir. 6/28/12), 102 So.3d 801, 804, n.1, writ denied , 12-1694 (La. 2/22/13), 108 So.3d 763.

The Hicks brothers and Tommie Molette were tried together. Anderson, who was not charged with second degree murder, was tried separately from the other three co-defendants.

In 2010, A.P. and Richshawn Williams, an associate of the Hicks brothers, were charged with multiple counts of armed robbery. In 2011, A.P. pled guilty to one count of the lesser charge of accessory after the fact to armed robbery in exchange for a reduced sentence of three years; Williams pled guilty to one count of armed robbery in exchange for a sentence of twenty years. The disparity in their sentences created tension between A.P. and Williams.

Originally, J.A. positively identified Kevin, Kevias, and Anderson from photographic lineups as the shooters. However, at trial, she testified that she did not recall seeing Kevin's face.

A full discussion of ballistics evidence presented at trial is presented infra.

Dr. Garcia testified that Deshon Evans received six gunshot wounds : a projectile entered the upper left chest near the arm pit and exited through his arm; a projectile entered the left forearm and exited through his back; another projectile entered the forearm and exited above the wrist; a projectile entered the back side of the right thigh going through the muscle and exiting the thigh; a fifth projectile entered decedent's cheek going from right to left but did not exit; and the sixth projectile was the lethal wound to the right side of the head that penetrated his brain. Dr. Garcia recovered intact projectiles from the decedent's brain.

Trial testimony revealed that an unrelated defendant pled guilty to the December homicide on Clearview Parkway at I-10.

In this opinion, we will address the assignments together as they are related.

Application of the "law of the case" doctrine is discretionary and the prior denial of a supervisory writ does not bar reconsideration of an issue on appeal, nor does it prevent the appellate panel from reaching a different conclusion on the issue. State v. Voltolina , 10-1090 (La. App. 5 Cir. 10/25/11), 77 So.3d 1027, 1031. Reconsideration is warranted when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results. State v. Earls , 12-448 (La. App. 5 Cir. 12/11/12), 106 So.3d 1149, 1159, writ denied , 13-132 (La. 9/20/13), 122 So.3d 1012. Although this Court denied defendant's writ application in State v. Molette , 16-K-457 (La. App. 5 Cir. 8/24/16) that raised the same issue he asserts on appeal, we will address the merits of the issue in an abundance of caution.

Although defense counsel did not file a written Motion to Sever the Counts, he argued at the severance hearing that the July Mount Kennedy and October Becker Street offenses should have been severed for trial. Further, defense counsel objected to the denial of his motion to sever the counts. This opinion will address the error that was objected to at trial and raised on appeal.

See State v. Davis , 12-512 (La. App. 5 Cir. 4/24/13), 115 So.3d 68, 84-85, writ denied , 13-1205 (La. 11/22/13), 126 So.3d 479, where this Court found that any possibility of prejudice in the joinder of offenses was mitigated by the jury instructions and the State's orderly presentation of the evidence, noting that the jury instructions listed the eight crimes with which the defendant was charged along with the responsive verdicts for each offense, that for the charges of second degree murder and attempted second degree murder the instructions specified the victim of each offense, that the instructions also provided the elements for each charged offense as well as the elements for each responsive verdict, and that the jury received eight separate verdict sheets each indicating the charged offense and the responsive verdicts. This Court found that based on the foregoing, any possible juror confusion was minimized.