401 So.2d 1179 (1981)
STATE of Louisiana
v.
Kelvin R. SMITH.
No. 80-KA-2504.
Supreme Court of Louisiana.
June 25, 1981.
*1180 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., William R. Weatherford, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
Frank T. Saia, and M. Michele Fournet, Baton Rouge, for defendant-appellant.
SWIFT, Justice ad hoc.[*]
The grand jury of East Baton Rouge Parish returned a true bill of indictment against the defendant, Kelvin R. Smith, charging him with second degree murder of Arthur Camel in violation of La.R.S. 14:30.1. At the conclusion of the trial the jury found the defendant guilty as charged by a vote of ten to two. Thereafter he was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence as required by the statute. The defendant filed six assignments of error, but only two were briefed and argued. Therefore the others are considered abandoned.

FACTS
On August 16, 1979, defendant Smith picked up his girlfriend, Linda Camel, and her three children and drove them in his car to her mother's house. The two older children got out there. Shortly thereafter Linda's brother, Arthur Camel, and his girlfriend, Carolyn Spencer, got in the back seat of the car, Linda and the baby being in the front seat with the defendant. After driving around for a while the defendant stopped the car, got out and pointing a pistol at Mr. Camel ordered him out of the vehicle. As Camel was doing so, defendant struck him in the face with a gun, knocked him to the ground and stomped or kicked him. The defendant then got back in the car and drove off with Linda Camel, leaving the victim unconscious in the street.
In the meantime a crowd had gathered. Carolyn Spencer called an ambulance from a nearby house. When she returned the victim's body had been moved a short distance down the street. The victim was taken to the hospital and died a few days later without regaining consciousness. Upon learning of Camel's death, the defendant went to the police station voluntarily and was arrested.
The defenses urged were self-defense (based solely on the defendant's testimony that he believed Camel had a gun wrapped in a bandana), the lack of any specific intent to kill or do great bodily harm to the victim (mainly on the basis that defendant *1181 did not fire his loaded pistol) and that the victim's death had not resulted from the defendant's attack (as Carolyn Spencer testified she saw members of the crowd kicking or striking the victim with sticks after she called the ambulance).
The defendant testified that because of his relationship with Linda he had had prior trouble with the Camel family. He and the victim got into an argument while driving around just before this incident and he was afraid Camel was armed and was going to attack him. So he stopped the car and told the victim to get out. When Camel did, "he came out of the car with his bandana ... I felt like he had a gun or something wrapped up in it." The defendant's pistol was in his hand and he said he slapped Camel with it trying to avoid an attack. They started fighting with their fists and Camel was knocked down. Defendant maintained that he had struck the victim in the head with a gun only once and kicked him only one time.
On the other hand, both Linda Camel and Carolyn Spencer testified that defendant picked up Arthur and Carolyn to go look for some dope. None of the occupants of the car except Smith had a weapon of any kind. They drove around for a while and the defendant stopped the car. He told the victim to give him money. Arthur had none, but Linda Camel gave him $65.00 in food stamps. Defendant then produced his gun and told all of them to get out of the car. As Arthur did so, defendant struck him with the pistol several times on his head or neck. Camel made no attempt to defend himself, did not reach for a weapon and made no move toward Smith. After falling to the ground, Camel was kicked and stomped by defendant in the head and other parts of his body numerous times. None of the bystanders attempted to stop this. Finally, defendant told Linda to get in the car and run over Camel. When she refused, saying she could not drive, defendant got her and the baby back in the car and left. Although her recollection was not vivid, Ms. Spencer said on cross-examination she thought she saw some members of the crowd kicking or using sticks on the victim when she returned from calling the ambulance.
The only other eye witness who testified at the trial, Josie L. Johnson, was a disinterested resident of the area. She said that while in her kitchen she heard yelling and walked out on the porch. There she saw a lot of people. One man was on the ground and "this other guy hit him with a gun, and he was stomping him and kicking him." The victim was kicked hard and was not moving. She said that she did not see a weapon anywhere around the man on the ground.
The defendant is six feet tall and weighs about 190 to 195 pounds. Arthur Camel was five feet seven or eight inches tall and weighed approximately 140 to 150 pounds.

ASSIGNMENT OF ERROR NO. 4
During the state's cross-examination of defendant the following was said:
"Q. Did you go back by the Camel house that afternoon or late that night?
A. Did I go back there? No, I didn't go back.
Q. Didn't drive by there?
A. Yeah, I passed by there.
Q. Did you shoot at that house?
A. No, I didn't shoot.
Q. You're sure?
A. I'm sure.
Q. You never shot a gunfired three shots into the house?
A. No, I didn't.
Q. You're sure about that?
A. Yeah."
The defendant contends that this was impermissible reference to another crime alleged to have been committed by the defendant and the trial judge committed reversible error in denying his motion for a mistrial under La.C.Cr.P. Art. 770(2). Additionally, defendant argues that even if evidence of such crime might be admissible under La.R.S. 15:445 and 446 to establish intent, it was inadmissible in this instance because of the state's failure to give the *1182 prior notice required by State v. Prieur, 277 So.2d 126 (La.1973).
In our opinion the state's questions as to firing shots into the house were improper, particularly in view of the prosecutor's statement that he did not intend to offer any evidence to establish that the defendant actually fired shots at the victim's house. However, we are convinced that Smith's rights were not substantially prejudiced thereby and that the error was harmless.
Defendant's testimony with respect to self-defense was not corroborated by a single witness and it is obvious that in this attack the defendant at least intended to inflict great bodily harm. From the evidence presented in regard to the beating and cause of death, the likelihood that Camel's death resulted from a blow struck by a bystander rather than those administered by the defendant is far too remote to be reasonably possible.
Thus, the evidence of defendant's guilt is overwhelming. In our opinion there is no reasonable possibility that the state's question as to defendant shooting at the house, with the defendant's negative answer, might have contributed to the conviction. Therefore, we are able to declare a belief that the error pointed out in this assignment was harmless beyond a reasonable doubt. State v. Gautreaux, 377 So.2d 289 (La.1979); State v. Gibson, 391 So.2d 421 (La.1980).

ASSIGNMENT OF ERROR NO. 6
In this assignment defense counsel contends that reversible error occurred in connection with the denial of a motion for mistrial based on the following objectionable testimony of Detective Robert Sadesky concerning his interrogation of the defendant at the police station:
"Q. Did he tell you that he knew of anyone there who was present that witnessed thisthis fight?
A. He said that there was one subject in the neighborhood that he knew as Rick.
Q. Did he know his last name or anything?
A. He didn't mention his last name.
Q. Did he tell you anything that Rick knew about this case?
A. He advised us that after the incident took place that the subject Rick came up to him and told him that he had had enough.
Q. Who had enough?
A. That the victim had had enough, and the suspect then proceeded to say that he's still moving. He still wants some more."
One of the grounds for this objection asserted in defendant's brief is that the inculpatory statement mentioned was improper rebuttal because it should have been offered during the state's case in chief. However, the record reflects that the only grounds for the objection stated at the trial were that defendant was not informed prior to the opening statement that the state intended to introduce the inculpatory statement as required by La.C.Cr.P. Art. 768 and that no proper foundation had been laid to attempt to impeach the defendant's testimony through this prior inconsistent statement. Be that as it may, the statement allegedly made by defendant in regard to the beating is obviously an inculpatory statement requiring notice under Article 768 and its admission in evidence was error. However, for the reasons pointed out above we are convinced that there is no reasonable possibility that the evidence complained of might have contributed to the conviction and we are able to declare a belief that the error was harmless beyond a reasonable doubt.
These assignments of error therefore lack merit.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
AFFIRMED.
DIXON, C. J., and DENNIS, J., dissent.
NOTES
[*] Judges O. E. Price and Fred W. Jones, Jr. of the Court of Appeals, Second Circuit, and Judge G. William Swift, Jr. of the Court of Appeal, Third Circuit, participated in the decision as associate justices ad hoc, joined by Chief Justice John A. Dixon, Jr. and Associate Justices Walter F. Marcus, Jr., James L. Dennis and Jack C. Watson.