416 So.2d 914 (1982)
STATE of Louisiana
v.
Hilton WILLIAMS & Terry Barnes.
No. 81-KA-2912.
Supreme Court of Louisiana.
June 21, 1982.
*915 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Morgan J. Goudeau, Jr., Dist. Atty., Robert Brinkman, Asst. Dist. Atty., for plaintiff-appellee.
Edward J. Lopez, Opelousas, for Hilton Williams.
Robert F. DeJean, Jr., Opelousas, for Terry Barnes.
H. CHARLES GAUDIN, Justice Pro Tem.[*]
Appellants Hilton Williams and Terry Barnes were jointly charged with the crime of attempted second degree murder.[1] They were tried before a 12-person jury, which unanimously found both defendants guilty of aggravated battery.[2]
Williams was sentenced to five years at hard labor while Barnes received eight years.
They are before this Court with two identical assignments of error:
(1) That they should have been granted a severance and tried separately; and
(2) That the trial court erred in admitting an oral inculpatory statement made by Williams to an investigating police officer.
We cannot agree with either contention.

ASSIGNMENT OF ERROR NO. 1
After selection of the jury but prior to opening statements, both defendants filed motions to sever, alleging antagonistic defenses.
LSA-C.Cr.P. Art. 704 provides:
"Jointly indicted defendants shall be tried jointly unless:
(1) The State elects to try them separately; or
(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance."
The trial judge held a severance hearing, during which four witnesses testified. They were Johnny Edmunds, as eyewitness to the altercation between appellants and the victim; both attorneys, Edward Lopez for Williams and Robert Dejean for Barnes; and Williams.
Each attorney said that his client blamed the other defendant for the injuries inflicted on Kenneth Johnson. The bill of information charged Williams and Barnes with an attempt to murder Johnson "... in the second degree."
Edmunds described a confrontation between Williams and Johnson that started in an Opelousas lounge. After being cut in the hand by Johnson, Williams armed himself with "... a piece of plank ..." and started chasing Johnson, with Barnes also in pursuit. Barnes had "... picked up two bricks in front of the nightclub and ran behind Mr. Williams ..."
Finally, Johnson stopped and "... had his knife out again, and he was jabbing at Williams ..." while Williams "... was swinging the plank at him ... Barnes then cut across the yard with a brick in his hands, and he threw the brick, and the brick caught Mr. Johnson ... he just spun around and he dropped."
While Johnson was on the ground, Barnes struck him again with a brick.
Before the chase started, Williams said, he had thrown a brick at Johnson and it had "... glanced him on the shoulder."
At a motion to sever, the burden is on the defendants to satisfy the trial judge that "... justice requires a severance." Mere allegations will not suffice.[3]
In a sense, Williams' defense is antagonistic to Barnes', and vice versa, inasmuch *916 as each pointed a finger at the other, but this does not make the defenses automatically antagonistic. Prejudice must be shown if the defendants are to receive separate trials.
This Court, in State v. Simmons, 381 So.2d 803, stated:
"While the confessions of these defendants do purport to shift the blame for the shooting to the other, the defenses are not by reasons thereof rendered antagonistic. Both confessions involve both defendants as principals. Only the extent of participation is contradictory. The degree of blame each seeks to cast upon the other does not suffice to warrant severance."
In State v. McGraw, 366 So.2d 1278 (La. 1978), this Court discussed fully and in historical detail the problems related to antagonistic defenses, beginning with the first reported case reversing a conviction because a severance was denied.[4]
Neither Art. 704 nor its predecessor article[5] provides the trial judge with a precise standard with which to exercise his authority, but a series of cases have developed the so-called "antagonistic defenses" test which, if and when satisfied, would require a severance. To meet the test, a defendant must show that a joint trial would be prejudicial to his interests.
Here, neither Williams nor Barnes could convince the trial judge of any possible prejudice, and the motions to sever were denied.
The trial judge's granting or denial of a severance rests in his sound discretion; and absent a showing of clear abuse, his ruling will not be reversed. See State v. Jenkins, 340 So.2d 157 (La.1979), cited favorably in State v. Whitt, 404 So.2d 254 (1981).
Considering the testimony taken at the motion to sever, it is clear that the trial judge's denial was not abusive.
Looking back at the trial itself, it is difficult to visualize prejudice to either defendant. The majority of the testimony involves both Williams and/or Barnes; only the extent of participation is occasionally contradictory.
The evidence overwhelmingly supports the verdicts apart from the testimony by appellants; and even in retrospect, neither Williams nor Barnes can demonstrate that he would not have been convicted had he been granted a separate trial.
It should be noted that a policy consideration implicit in Art. 704 situations is the reasonableness of presenting the entire case at one time.
From State v. Bradford, supra:
"Where a crime involves more than one actor, the need arises to balance the interest of the State in trial economy against the rights of defendants to separate trials. Joinder expedites the administration of justice, reduces the congestion of the trial dockets, conserves judicial time, lessens the burdens upon citizens who must sacrifice both time and money to serve on juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once."

ASSIGNMENT OF ERROR NO. 2
Defendants allege that the trial court erred in admitting into evidence an inculpatory statement made by Williams to a policeman without the State providing prior written notice.
LSA-C.Cr.P. Art. 768 reads:
"If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."
Approximately three weeks in advance of trial, written notice of the intent to use *917 Williams' statement was mistakenly sent to Barnes' counsel. On the day before opening statements, a hearing was conducted on the voluntariness of both defendants' statements to the police officer, and Williams' statement was found to be voluntary.
At trial, the State offered the statement into evidence and it was received over objection by Williams.
In State v. Sneed, 316 So.2d 372 (La.1975), this Court held that even in the absence of the written notice required by Art. 768, a defendant is not prejudiced by the admission of statements if he has had actual notice by other means. The hearing on the free and voluntary nature of defendant's statement, just as a hearing on a motion to suppress, affords adequate compliance with the notice requirements of Art. 768. Accordingly, Williams and Barnes were not taken by surprise nor were they in any way prejudiced by the trial court's admission of the statement.
Finally, even if the admission of the inculpatory statement was without prior written notice, the evidence of both defendants' guilt was so strong that the failure to meet the Art. 768 requirement constituted harmless error, as in State v. Smith, 401 So.2d 1179 (1981).
This assignment of error, like the first, lacks merit and we affirm the convictions.
NOTES
[*] Judge H. Charles Guadin of the Court of Appeal, Fifth Circuit, and Judges Israel M. Augustine, Jr. and Philip C. Ciaccio of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices Ad Hoc joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Watson.
[1] LSA-R.S. 14:27, 14:30.1.
[2] Verdicts responsive to attempted second degree murder are: (a) Guilty, (b) Guilty of attempted manslaughter, (c) Guilty of aggravated battery and (d) Not guilty.
[3] State v. Bradbury, 367 So.2d 745 (La.1978).
[4] State v. Desroche, 47 La.Ann. 651, 17 So. 209 (1895).
[5] Article 316 of the 1928 Code of Criminal Procedure.