STATE OF LOUISIANA

VERSUS

GILBERT J. BURCIAGA

NO. 23-KA-13

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 21-412, DIVISION "I"
HONORABLE NANCY A. MILLER, JUDGE PRESIDING

November 29, 2023

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
John J. Molaison, Jr., and Scott U. Schlegel

**AFFIRMED**
    **JJM**
    **SMC**
    **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
        Honorable Paul D. Connick, Jr.
        Thomas J. Butler
        Monique D. Nolan

COUNSEL FOR DEFENDANT/APPELLANT,
GILBERT J. BURCIAGA
        Holli A. Herrle-Castillo

**MOLAISON, J.**

The defendant, Gilbert J. Burciaga, has appealed his conviction of sexual battery of a child under the age of thirteen, in violation of La. R.S. 14:43.1. For the following reasons, we affirm his conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

On March 16, 2021, the Jefferson Parish District Attorney filed a bill of information charging the defendant with sexual battery of a known juvenile (DOB 09/03/2011) under the age of thirteen in violation of La. R.S. 14:43.1.[1] After pleading not guilty at his arraignment, the defendant filed a motion to sever, which was denied.

On April 7, 2022, at the conclusion of a two-day trial, a twelve-person jury unanimously found the defendant guilty as charged. On April 25, 2022, the defendant was sentenced to hard labor for sixty-five years without the benefit of parole, probation, or suspension of sentence. The court also ordered the defendant to register as a sex offender for the rest of his life.

On July 22, 2022, the defendant stipulated to being a second-felony offender, and he was re-sentenced to serve sixty-five years at hard labor without benefit of parole, probation, or suspension of sentence. This timely appeal followed.

## FACTS

The testimony at trial indicates that on December 6, 2020, the Westwego Police Department received a call stating that A.H., a juvenile, had reported being sexually assaulted by the defendant, who was married to her maternal

---

[1] The co-defendant, David A. Gabriel, Jr., was charged in the same bill and tried with the appellant. The jury could not reach a verdict on the charge against Gabriel. The State entered a *nolle prosequi* as to Gabriel's charges on July 13, 2022.

grandmother.[2]  The report was made by the juvenile's mother, I.H., and the juvenile's paternal grandfather, Ivory Jenkins.

Stacey Jenkins, who is married to Ivory Jenkins,[3] testified that on December 6, 2020, she was at home with Mr. Jenkins and A.H, when A.H. told Ms. Jenkins that "Pawpaw Gilbert" touches her.  Ms. Jenkins elaborated that A.H. told her, "He comes by me and he pulls my underwear down, or he'll pull his pants down and try to put his private parts in my mouth or in my underwear."  Ms. Jenkins said she asked A.H. if it was one time or more than one time, and she responded, "It's every time Mawmaw Tabitha goes to work at night."  A.H. stated the last time this occurred was in August.

Ms. Jenkins knows the defendant as "Pawpaw Gilbert," and she identified him in open court.  Ms. Jenkins explained that "Mawmaw Tabitha" was the defendant's wife, and A.H.'s other grandmother.  The defendant and Mrs. Burciaga lived together in Westwego, which is where A.H. said the abuse occurred.  Ms. Jenkins confirmed that Ms. Burciaga is now deceased.

A.H. also told Ms. Jenkins that "David," another person in the household, was also touching her.  Ms. Jenkins did not know someone named David.  After A.H. told her about the abuse, Ms. Jenkins told her husband and asked him to talk to A.H.

I.H., the mother of A.H., testified that in December 2020, A.H. was eight years old.  I.H. identified her deceased mother as Tabitha Burciaga, who was married to the defendant.  I.H. testified that A.H. often spent time at the Burciaga home, which had three bedrooms.  I.H.'s brothers and sisters also lived in the

---

[2] In the interest of protecting minor crime victims and victims of sexual offenses as set forth in La. R.S. 46:1844(W)(3), only initials are used to identify the victim and any defendant or witness whose name can lead to the victim's identity.

[3] Mr. Jenkins was in the hospital at the time of Mrs. Jenkin's testimony.

home. I.H. had lived in the defendant's home for a couple of months from 2019 to 2020.

Aubrey Ziegler, who is employed by the Gretna Police Department and assigned as a forensic interviewer to the Children's Advocacy Center (CAC), testified that her job is to conduct evidence-gathering, non-leading, non-suggested interviews with children who have alleged abuse or neglect or who witness a violent crime. On December 15, 2020, she interviewed A.H. The interview was recorded, admitted into evidence, and published to the jury.

A.H., who was ten years old on the date of her testimony, testified that Mr. and Ms. Jenkins are her grandparents. Ms. Burciaga was her "mawmaw," and was married to the defendant, whom she identified in open court. A.H. said she spent time with both sets of her grandparents on the weekends. A.H. testified that on December 6, 2020, she told Ms. Jenkins that she was touched on "her private and her behind." She described her "private" as "the place [she] use[s] the bathroom." She said the defendant touched her more than once when she was seven or eight years old. She also said that the defendant would make her touch his "privates" every time Ms. Burciaga would leave the house. She said that one of the times the defendant touched her, she and the defendant were the only two people in the house. A.H. elaborated that the defendant followed her in a room and "he pulled his pants down and he put his private in [hers]… He moved [her] shorts aside and put his private in [hers]." She remembered that an episode of "Sam and Kat" was playing on the TV, she was wearing shorts, and "white spit" came out of his private. She also described an incident when her little sister was in the room, and she said, "One time he - - he went under the cover and he pulled my pants down and he licked my private." She described another event that happened in Selena Jenkins' room. She said, "Another time he - - when mawmaw was leaving, he pulled down his pants and he grabbed my hand and he made me touch his

private… He made my hand go up and down." A.H. said that the defendant also tried to put his private in her mouth, and she closed her mouth, but he tried to open it. A.H. further described the incident when "Sam and Kat" was on the TV. She said, "When he put his private in my private, he pulled my shirt down and he put his mouth on my nipples." When asked if the defendant did anything else to her body, she said, "I don't know." She said she felt scared when this was happening to her.

On cross-examination, A.H. testified that she had not told any of her uncles or aunts what happened before she told Ms. Jenkins. A.H. did not know the dates the incidents happened with the defendant, but she knew they happened before she told Ms. Jenkins about them.

Anne Troy, Ph.D., an advanced practice nurse practitioner, who was accepted as an expert in child abuse and child pediatrics, testified that she examined A.H. on February 6, 2021 and rendered a report. She diagnosed A.H. with "child sexual abuse, chronic, two perpetrators." The State published one of the pages from A.H.'s medical records, which Dr. Troy described as a drawing where A.H. identified the body parts, and A.H. drew defendant's "front private." When asked how many instances of sexual abuse A.H. reported, Dr. Troy recited her summary which reflected that A.H. reported there were multiple times of abuse by the defendant, where he made her touch his penis. A.H. described the defendant's ejaculation "like spit" that the defendant wiped it off with his shirt. A.H. stated that the defendant licked her nipples and her "front private and that he put his front private in her."

Dr. Troy testified that it is very common for victims to delay reporting sexual abuse. Dr. Troy explained that children never give all the details about sexual abuse immediately because children go through a process of disclosure in

which they say one thing to gauge the reaction, and if they feel safe and no one is screaming at them, children will tell more.

After the State rested, the defendant took the stand. He testified that he had been addicted to heroin "off and on" since he was nineteen years old and that he had been clean for approximately five years. The defendant denied touching A.H., stating that he had "suspicions" of why she would make those allegations. He explained that he was close friends with Mr. Jenkins when Mr. Jenkins was married to Ms. Burciaga. After the defendant married Ms. Burciaga, he no longer spoke to Mr. Jenkins. The defendant expounded that two days before the abuse allegations were made, Mr. Jenkins and I.H. came to his house, where they were drinking, smoking, and "chilling" for a few hours. During the visit, the defendant found out that Mr. Jenkins was having problems with his wife, leading the defendant to think that Mr. Jenkins was "trying to get back with Tabitha."

The defendant denied ever being alone with A.H. in his apartment, testifying "…because at the time it was COVID, so there was nowhere to go. I always had a house full of people so never, never alone." The defendant said that from August to October of 2020, he had a "clear head" because he was no longer on heroin. He lived with his wife, his son, Emmanuel Burciaga, and three of his wife's kids, Quincy, Sylvester, and Selena Jenkins. The kids were from the ages of sixteen to nineteen, and all of them were always present in his home because they were not going to school. When I.H. dropped off her children, his wife or Selena Jenkins would be responsible for watching them, and he was never solely responsible for their care.

Pastor Ander Pellerano, senior pastor at One Accord Ministries, testified that after his treatment for heroin addiction, he started his own ministry. He explained that he mostly saw the defendant when they were younger because they were in and out of jail. Pastor Pellerano said that after he started his ministry, he invited

the defendant to church. The defendant had completed treatment for heroin addiction, and had become a respected member of his church.

Emmanuel Burciaga, the defendant's son, testified that he lived in Westwego with the defendant, Ms. Burciaga, Selena, Quincy, and Sylvester Jenkins for about a year and a half in 2019 or 2020. Mr. Burciaga said Sylvester and Selena had their own room, and he slept in the living room. Mr. Burciaga said he was living there during COVID. He testified that the defendant worked and that sometimes Ms. Burciaga cleaned houses.

Mr. Burciaga said that sometimes A.H. and her siblings were dropped off at the house by their mother. He was aware that his father is accused of sexual battery, but he was not aware of a time when A.H. was alone with the defendant. He testified that A.H. and her siblings slept in different rooms. A.H. slept with Selena, and the door to that room had been removed from the hinges. Mr. Burciaga testified that prior to the abuse allegations, he recalled that Mr. Jenkins came to the apartment in Westwego alone.

## ASSIGNMENT OF ERROR NUMBER ONE

The trial court erred in denying the defense's challenges for cause.

## DISCUSSION

On appeal, the defendant argues that the trial court should have granted the defendant's challenges for cause regarding two potential jurors, Keenan Holmes and Fabienne Elien. The State responds that the defendant did not make an objection at the time of the ruling, and therefore, he may not assign the court's ruling as error. Alternatively, the State asserts that if defendant did preserve his right to appeal this issue, the trial court did not err in denying the defendant's challenges for cause.

The Sixth Amendment of the United States Constitution guarantees the accused the right to a trial by an impartial jury. *State v. Anderson*, 06-2987 (La.

9/9/08), 996 So.2d 973, 995, *cert. denied*, 556 U.S. 1165, 129 S.Ct. 1906, 173 L.Ed.2d 1057 (2009). La. Const. Art. I, §17 guarantees the right to full *voir dire* examination of prospective jurors and to challenge those jurors peremptorily. *Id.* La. C.Cr.P. art. 799 provides that in trials of offenses punishable by death or necessarily imprisonment at hard labor, each defendant shall have twelve peremptory challenges, and the State shall have twelve peremptory challenges for each defendant.

Prejudice is presumed when the trial court erroneously denies a challenge for cause, and the defendant ultimately exhausts his peremptory challenges. *State v. Campbell*, 06-286 (La. 5/21/08), 983 So.2d 810, 856, *cert. denied*, 555 U.S. 1040, 129 S.Ct. 607, 172 L.Ed.2d 471 (2008); *State v. Hensley*, 04-617 (La. App. 5 Cir. 3/1/05), 900 So.2d 1, 8, *writ denied*, 05-823 (La. 6/17/05), 904 So.2d 683. Thus, to prevail on appeal, a defendant must demonstrate (1) erroneous denial of his challenge for cause; and (2) use of all his peremptory challenges. *Hensley*, *supra*. Additionally, the defendant must show that when the trial court denied his challenge for cause, he used one of his peremptory challenges curatively to remove that juror, thereby reducing his number of peremptory challenges, or waive the issue on appeal. *Campbell*, *supra*. This is so even in a case where the defendant uses all of his peremptory challenges. *Id.*

In the instant case, the defendant was charged with sexual battery of a juvenile under thirteen, in violation of La. R.S. 14:43.1, which is punishable by hard labor for not less than twenty-five years nor more than ninety-nine years. Therefore, he was entitled to twelve peremptory challenges pursuant to La. C.Cr.P. art. 799. The record reflects that the defendant used peremptory challenges to dismiss Mr. Holmes and Ms. Elien after his challenges for cause for these jurors were denied. The defendant used all of his peremptory challenges.

As noted by the State, the defendant failed to object to the trial court's denial of his challenges for cause.

A defendant must show that he objected at the time that the trial court refused to sustain a challenge for cause of the prospective juror. *State v. Griffin*, 14-450 (La. App. 5 Cir. 12/16/14), 167 So.3d 31, 42, *writ denied*, 15-148 (La. 11/20/15), 180 So.3d 315. Louisiana Code of Criminal Procedural articles 800(A) and 841(A) set forth objection requirements:

La. C.Cr.P. art. 800(A) provides:

A. A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. The nature of the objection and grounds therefor shall be stated at the time of objection.

La. C.Cr.P. art. 841(A) states:

An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

Previously, in *State v. Vanderpool*, 493 So.2d 574, 575 (La. 1986), the Louisiana Supreme Court held:

Our law is also settled that an objection need not be raised by incantation. "It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor." C.Cr.P. 841; *State v. Boutte*, 384 So.2d 773 (La. 1980). The requirement that objection be raised contemporaneously is not meant to be inflexible, but is designed "to promote judicial efficiency and to insure fair play." *State v. Lee*, 346 So.2d 682, 684 (La. 1977). Article 800 should not be read to differ in this respect from Article 841.

*Id*.

In *Vanderpool*, defense counsel urged and re-urged a challenge for cause against a deputy sheriff. He stated, "Your Honor, I would like to re-urge our challenge for cause on Mr. Pitre. I think due to his substantial involvement in law

enforcement." *Vanderpool,* 493 So.2d at 574-75. The trial court denied the challenge for cause, and defense counsel utilized an available peremptory strike. The court of appeal affirmed, finding that the defendant failed to object during *voir dire* or to state the reasons for his objection. The supreme court granted *certiorari* and held that by making it known that he wanted the potential juror excused and voicing the reasons why, the defendant had preserved the issue for appeal. *Id*. at 575.

In *State v. Pinion*, 06-2346 (La. 10/26/07), 968 So.2d 131, 136 (*per curiam*), the supreme court relied upon a portion of La. C.Cr.P. art. 841(A) in holding that in jury selection, counsel satisfies the requirements of Louisiana's contemporaneous objection rule by stating his grounds for a cause challenge, and then by removing the juror with one of his remaining peremptory challenges when the court declines to excuse the juror for cause.

Thereafter, in *State v. Anderson*, 09-105 (La. App. 5 Cir. 10/27/09), 28 So.3d 324, 332, *writ denied*, 09-2596 (La. 5/21/10), 36 So.3d 229, the defendant argued that the trial court improperly denied the defense's challenges for cause as to two prospective jurors. The State argued that the trial court did not abuse its wide discretion in denying the challenges, but noted that there were no contemporaneous objections to those denials. This Court found that the defendant had preserved the juror issues for appeal when the record was clear as to the defendant's reasons for the challenges of two prospective jurors and that he removed each juror with his remaining peremptory challenges when the trial court declined to excuse the jurors for cause. This Court considered the rationale in *Pinion*, *supra*, and the decision in *Vanderpool*, *supra*, stating: "[I]t is clear that the defendant made known the reasons for the challenges and that he removed each

juror with one of his remaining peremptory challenges when the court declined to excuse the jurors for cause. Therefore, he preserved the issues for appeal." *Id.*[4]

Most recently, in *State v. Sagastume*, 22-32 (La. App. 5 Cir. 11/16/22), 353 So.3d 318, *writ granted*, 22-1824 (La. 5/23/23), 360 So.3d 835, which is currently pending before the Louisiana Supreme Court, this Court found that the lack of a formal objection by defense counsel after the trial court's denial of his challenges for cause was not fatal to defendant's claims on appeal considering that defense counsel clearly and contemporaneously articulated the reasons for his challenges. *Id*. at 323. The *Sagastume* opinion cited *State v. Record*, 18-614 (La. App. 3 Cir. 2/27/19), 266 So.3d 592, 602, in which the third circuit chose to review the denial of the defendant's challenge for cause finding that, although defense counsel did not lodge an objection, counsel did note his reasons for his challenge for cause of the juror and, thereafter, exercised a peremptory challenge when the challenge for cause was denied. Likewise, in *State v. Humphrey*, 22-724 (La. App. 3 Cir. 3/29/23), 364 So.3d 437, 454, the third circuit held that although defense counsel did not lodge an objection, he did set forth his reasons for the challenge for cause and later exercised a peremptory challenge when the challenge for cause was denied. Therefore, the court found that the challenge for cause was preserved for review.[5]

### Juror Keenan Holmes

We find that the challenge for cause with regard to Mr. Holmes was preserved for appellate review because defense counsel clearly stated the reasons

---

[4] *See also State v. Williams*, 02-1188 (La. App. 5 Cir. 4/8/03), 846 So.2d 22, 27 n.4 (where trial counsel did not make an express contemporaneous objection to the trial court's ruling each time that a challenge for cause was denied, but this Court reviewed the claims because in the context of the proceedings, the record reflected there was an understanding among both counsel and the trial judge concerning the defense objections, and trial counsel gave full reasons for the challenges at the time she made them).

[5] However, the first circuit has consistently held that appellate review of a denial of a challenge for cause is not preserved unless a defendant lodged a contemporaneous objection to the trial court's ruling. *See, e.g.*, *State v. Mills*, 13-573 (La. App. 1 Cir. 8/27/14), 153 So.3d 481, *writ denied*, 14-2027 (La. 5/22/15), 170 So.3d 982, *and writ denied*, 14-2269 (La. 9/18/15), 178 So.3d 139.

for his challenge for cause and later exercised a peremptory challenge when the challenge for cause was denied. In raising the challenge for cause, defense counsel argued that during *voir dire*, Mr. Holmes "indicated the State would have less of a burden. He has two small children and the State would start off -- the Defendants would start off with less of a presumption of innocense [sic]." The State responded that Mr. Holmes was "rehabilitated," and the court ruled, "Cause is denied." Neither defense counsel raised an objection to the court's ruling.

The grounds for a challenge for cause are set out in La. C.Cr.P. art. 797, which provides in pertinent part:

> The state or the defendant may challenge a juror for cause on the ground that:
>
> * * *
>
> (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
>
> * * *
>
> (4) The juror will not accept the law as given to him by the court[.]

A prospective juror's seemingly prejudicial response is not grounds for an automatic challenge for cause, and a district judge's refusal to excuse him on the grounds of impartiality is not an abuse of discretion, if after further questioning, the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. *State v. Kang*, 02-2812 (La. 10/21/03), 859 So.2d 649, 653. A challenge for cause should be granted, however, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole, reveal facts from which bias, prejudice, or inability to render a judgment according to law may be reasonably implied. *Id.*

In ruling on a challenge for cause, the trial judge is vested with broad discretion; his ruling will be reversed only when a review of the entire *voir dire* reveals that the judge's exercise of discretion was arbitrary and unreasonable with

resultant prejudice to the accused.  This is necessarily so because the trial court has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to questioning by the parties' attorneys. Such expressions and intonations are not readily apparent at the appellate level where a review is based on a cold record.  *State v. Savage*, 16-511 (La. App. 5 Cir. 4/12/17), 218 So.3d 714, 719, *writ denied*, 17-1083 (La. 6/1/18), 243 So.3d 1063 (citing *State v. Munson*, 12-327 (La. App. 5 Cir. 4/10/13), 115 So.3d 6, 12, *writ denied*, 13-1083 (La. 11/22/13), 126 So.3d 476).

On appeal, the defendant asserts that Mr. Holmes "…was challenged by the defense because of his responses to the burden of proof, presumption of innocence, and prior convictions, specifically as it pertained to a child victim."

The record reflects that during *voir dire*, when provided a definition of reasonable doubt and individually asked about reasonable doubt, the following exchange occurred:

| THE STATE: | … Mr. Dadukian, you're okay with beyond a reasonable doubt? That makes sense to you? |
|---|---|
| MR. DADUKIAN: | Yes, sir. |
| THE STATE: | Okay. How about you, Mr. Holmes? |
| MR. HOLMES: | I agree. |
| | *** |
| MR. JORDAN: | And how about you, would you be able to give the same presumption of innocence? |
| | *** |
| MR. JORDAN: | Any thoughts about that? Would you have any hesitations in finding them not guilty? |
| | *** |
| MR. JORDAN: | Okay. Mr. Holmes, how do you feel about that? |
| MR. HOLMES: | I would have some hesitations just for the simple fact I have two young kids, so just to, you know, |

|                |                                                                 |
|----------------|-----------------------------------------------------------------|
|                | honestly speak, it would be hard initially, but of course, if I'm selected, I would listen to the evidence, the testimony, and make the right decision. But going into the situation, having two young kids myself – |
| MR. JORDAN:    | And your children are what, two and eleven?                     |
| MR. HOLMES:    | Mm-hmm.                                                          |
| MR. JORDAN:    | Is that right?                                                  |
| MR. HOLMES:    | Yes, sir.                                                       |
| MR. JORDAN:    | So that kind of puts that on your shoulders. And most of us have kids here in the panel, I think, you know. Do you think that somehow Mr. Gabriel starts off maybe with less of a presumption of innocence because of that? |
| MR. HOLMES:    | Yes, sir, honestly speaking.                                    |
| MR. JORDAN:    | Okay. And I appreciate you being honest with me. And so therefore, that goes to the burden of proof. And we'll talk about that, though. Do you think because of that lessened presumption of innocence, perhaps it also puts the State in the position of having perhaps less of a burden of proof than beyond a reasonable doubt to prove them guilty beyond a reasonable doubt? So let me put it to you like this and I'll just skip over something. You know, in a civil case, you know, the - - it's called preponderance of the evidence, fifty-one, forty-nine percent. But in a criminal case beyond a reasonable doubt, yeah, it's all the way, you know, 99.999, what would - - |
| THE COURT:     | No, no, no, no.                                                 |
| MR. JORDAN:    | Okay, I'm not going to go to percentages.                       |
| THE COURT:     | We don't give percentages. We don't give percentages. Reasonable doubt is reason based - - |
| MR. JORDAN:    | Reason and common sense, that you're firmly convinced in the guilt - - |
| THE COURT:     | Of the truth of the charge. Of the truth of the charge.         |
| MR. JORDAN:    | The truth of the charge. So given that, would you somehow make the State's burden less than it |

otherwise would be, what the Court's instruction would be?

**MR. HOLMES:** As of right now where it stands, yes, I believe they would have a less of a burden.

**MR. JORDAN:** And that's because of children being - -

**MR. HOLMES:** Just my slight bias. Right. Yes, sir.

\*\*\*

**MR. JORDAN:** Okay. How do you feel about that, Mr. Holmes? If you though [sic] probably he did it, what would your verdict be?

**MR. HOLMES:** It would have to be not guilt [sic].

\*\*\*

**MR. JORDAN:** So going with what Mr. McKinney said, this is my last question to you, all right, guys, having gone through two rounds of this now and listening to the case and all, would you want you yourself as a juror if you were sitting at that table, do you think you would be a good juror for yourself?

\*\*\*

**MR. HOLMES:** So, the only reason why I would say no, just thinking about this whole situation, is just for the simple fact that I have my slight bias just being a father with two small kids.

**MR. JORDAN:** And we talked about that already.

**MR. HOLMES:** Right.

\*\*\*

**MS. BOURGEOIS:** You also, during the last panel, heard me talk about prior convictions. Obviously, both gentlemen who are the Defendants are here today charged with a crime. I talked a lot about that. The State talked a lot about it. And I'm going to pose to you a hypothetical. What if, during the trial, you determined or you heard evidence that one or both of the Defendants had prior convictions for the worst possible thing you can imagine, because it's a hypothetical, would you hold that prior conviction against the Defendant such that you would no longer be able to presume him innocent?

Would anybody have a difficult time with that? Ms. Aldridge?

Thereafter, counsel for the defendant and the court went through a discussion of prior convictions with other jurors, and then counsel for the defendant turned to Mr. Holmes.

MR. HOLMES: For me, it would just depend. Well, I'll make it simple. No, I wouldn't hold it against him.

MS. BOURGEOIS: Well, I don't want you to make it simple, because obviously, people's rights are at issue here. And so it's very important that you share with, you know, the Court and with us your feelings on whether or not a conviction, a prior conviction, whether they be one, two, three or ten, would make somebody more likely - -

MR. HOLMES: So, for me, it just depends on the type of prior conviction. Like, if it was prior sexual convictions, then that may sway, in the back of my mind, sway me a different way to biasly [sic] think that he was guilty. But, I mean, if it's something that's not related to the crime, like she was saying murder or something like that, then I'll just look at, you know, the evidence that was presented in the case. And, I mean, I understand that we're supposed to just look at the evidence in that exact case. You can't hold a prior conviction against someone else, but just humanly speaking, it would be hard for me not to have that in the back of my mind and think about that, right.

MS. BOURGEOIS: And think that they were more likely to have committed this crime because of those previous crimes?

MR. HOLMES: Yes.

MS. BOURGEOIS: Ms. Lanier?

THE COURT: No. Mr. Holmes?

MR. HOLMES: Yes, ma'am.

THE COURT: The State hasn't presented any evidence yet, have they?

MR. HOLMES: Right. Right.

THE COURT: Right?

23-KA-13                              15

| | |
|---|---|
| **MR. HOLMES:** | Right. |
| **THE COURT:** | State has presented no evidence. Therefore, both Defendants are? |
| **MR. HOLMES:** | Innocent. |
| **THE COURT:** | Correct. First witness on the witness stand is somebody to testify that either one, both of them had five prior sexual molestation charges of a victim under the age of thirteen. Are any of them now guilty? |
| **MR. HOLMES:** | They were -- well, it depends on -- I guess they were guilty of the other crimes, but I guess the crime today, it would depend on me listening to all the testimony and then making my decision. |
| **THE COURT:** | Right. So the mere fact that they have prior convictions does not automatically make them guilty of the crime – |
| **MR. HOLMES:** | Right. I'm not saying I will automatically say that they're guilty, but I would still -- I would still |
| **THE COURT:** | It's a factor you would consider? |
| **MR. HOLMES:** | It would be -- right, yes, ma'am. Right. |
| **THE COURT:** | Okay. Next. Go ahead. |
| | \*\*\* |
| **THE COURT:** | All right. Y'all can come up when you're ready. In the meantime, I've got some questions that they're going to come up at the bench, so I'm going to handle them right now. Mr. Holmes? |
| **MR. HOLMES:** | Yes, ma'am. |
| **THE COURT:** | We may have covered this, we may not. I'm not sure. I have a note saying that you would hold the State to a lesser burden. Is that an accurate statement? I believe that was written during Mr. Jordan's examination. |
| **MR. HOLMES:** | Oh, I said, yeah, because of my bias just being a father. I think that's – |
| **THE COURT:** | That's right. |
| **MR. HOLMES:** | Yeah. |

| | |
|---|---|
| **THE COURT:** | That's right. You have young children? |
| **MR. HOLMES:** | Yes, ma'am. |
| **THE COURT:** | You walked in and you heard that the charges against the Defendants were sexual battery of a child under thirteen and you were taken aback? |
| **MR. HOLMES:** | Yes, ma'am. |
| **THE COURT:** | Anybody in this panel who was not taken aback? Anybody think this is going to be a pleasant experience to sit through? Right. It's not. What you have is a normal human reaction. The question is can you listen to this juror -- or listen to these witnesses, judge their credibility, listen to the law as the Court gives it to you, apply the facts to the law and come up with a fair and just verdict? |
| **MR. HOLMES:** | Yes, ma'am. |
| **THE COURT:** | And that is without regard for what the charge is? |
| **MR. HOLMES:** | Yes, ma'am. |
| **THE COURT:** | Okay. And you'd be able to -- you would hold the State to their burden of beyond a reasonable doubt? |
| **MR. HOLMES:** | Yes, ma'am. |

Burden of proof is one of the grounds for cause, which the defendant raised at trial and on appeal. The above colloquy indicates that Mr. Holmes initially agreed with the State that the burden of proof is beyond a reasonable doubt. Later, when asked whether he would make the State's burden less than what the court instructed, Mr. Holmes said, "As of right now where it stands, yes, I believe they would have a less of a burden." Thereafter, however, when questioned by the court, Mr. Holmes agreed that he would hold the State to its burden of beyond a reasonable doubt. Accordingly, we find that Mr. Holmes' responses reveal that he was rehabilitated and agreed to hold the State to its burden of proof beyond a reasonable doubt.

Presumption of innocence is also one of the grounds for cause the defendant raised at trial and on appeal. Regarding the presumption of innocence, when Mr. Holmes was asked by counsel for the co-defendant how he felt about the presumption of innocence, Mr. Holmes responded that because he has two young children, he "would have some hesitations," and "it would be hard initially," but if he were selected, he would listen to the evidence, the testimony, and "make the right decision." Then he was asked, "Do you think that somehow Mr. Gabriel starts off maybe with less of a presumption of innocence because of that?" Mr. Holmes answered, "Yes, sir, honestly speaking." Later, when Mr. Holmes was asked by the court, "State has presented no evidence. Therefore both defendants are?" Mr. Holmes answered, "Innocent." "An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence." *State v. Hamilton*, 16-587 (La. App. 3 Cir. 4/5/17), *writ denied*, 17-865 (La. 2/9/18), 236 So.3d 1260. Accordingly, we find that Mr. Holmes' responses reveal that he was rehabilitated and understood that the defendants were presumed innocent.

The issue regarding prior convictions is another ground for cause asserted by the defendant on appeal. In its brief, the State asserts that this issue is not one of the grounds the defendant expressed as a basis for Mr. Holmes' challenge for cause at trial, so it was not preserved for review.

It is well-established that a defendant is limited to the grounds for objection articulated at trial, and a new basis for the objection may not be raised for the first time on appeal. *State v. Cooks,* 97-999 (La. 9/9/98), 720 So.2d 637, 644, *cert. denied,* 526 U.S. 1042, 119 S.Ct. 1342, 143 L.Ed.2d 505 (1999); *State v. Taylor,* 04-346, (La. App. 5 Cir. 10/26/04), 887 So.2d 589, 595.

Pursuant to *State v. Clark*, 12-508 (La. 12/19/16), 220 So.3d 583, 662, *cert. granted, judgment vacated on other grounds*, – U.S. –, 138 S.Ct. 2671, 201 L.Ed.2d 1066 (2018), a party is limited on appeal to arguing the grounds which he stated in his challenge for cause. In *Clark*, the defendant claimed a prospective juror was biased against him due to his prior record, his desire to represent himself, and because she had family members in law enforcement. The court reviewed the exchange regarding the challenge for cause and noted that the defendant had not argued that the potential juror's unspecified familial relationship to law enforcement officers was a basis for the challenge; therefore, the court held that ground was not properly preserved for review under La. C.Cr.P. art. 800(A). *Id.* at 666-67.

In *State v. Nelson*, 09-807 (La. App. 5 Cir. 3/23/10), 39 So.3d 658, 664, a prospective juror was challenged for cause based on her responses regarding the defendant's prior convictions, and defense counsel objected. However, on appeal, the defendant argued the prospective juror should have been excused for cause because of her relationships regarding law enforcement. This Court held, "A defendant is limited to the grounds for objection that he articulated in the trial court, and a new basis for the objection may not be raised for the first time on appeal" (quoting *State v. Mitchell,* 08-136 (La. App. 5 Cir. 1/13/09), 7 So.3d 720, 733).

However, in *Sagastume*, *supra*, the State also argued that the defendant's grounds for challenging prospective jurors for cause in his brief on appeal were not those articulated before the trial court, and therefore, his claims were not preserved for appeal. This Court held, "We find that defendant's grounds for cause as stated on appeal are sufficiently intertwined with defense counsel's bases for cause articulated during the trial and consequently, his claims were preserved for appeal." *Sagastume*, 353 So.3d at 323.

In the instant case, when the defendant challenged Mr. Holmes for cause, he said, "As to Mr. Holmes, during my *voir dire*, I asked about the presumption of innocence, children. He says that the Defendants would get the same presumption of innocence because of the nature of the charge." The defendant argued that Mr. Holmes "indicated the State would have less of a burden. He has two small children and the State would start off -- the Defendants would start off with less of a presumption of innocense [sic]."

A review of the above exchange regarding the challenge for cause, indicates that defense counsel did not express prior convictions as a basis when Mr. Holmes was challenged for cause. Further, when defense counsel challenged Mr. Holmes for cause, he did not use any words or phrases that could be intertwined with an issue of prior convictions. Accordingly, we find that the defendant is limited to the grounds for objection that he articulated in the trial court, and prior convictions is a new basis for the objection that may not be raised for the first time on appeal. As such, this claim was not preserved for review.

### Juror Fabienne Elien

As to Ms. Elien, while counsel for the defendant did not move to challenge her for cause or assert any reasons as to why Ms. Elien should be removed for cause, counsel for co-defendant asserted,[6] "As to Eilin [sic] Fabienne, I believe the Defense -Ms. Bourgeois' examination, challenge for cause concerning her response to prior convictions." The State responded that Ms. Elien stated "that she wouldn't hold it against them." The court ruled, "She clearly said just because they were guilty of the prior crimess [sic], they weren't guilty of the crime right now. Cause is denied." Counsel for the co-defendant then said, "I have no other

---

[6] La. C.Cr.P. art. 842 provides that where the co-defendant objects, the objection is presumed to have been made by all defendants on trial unless the contrary appears. *State v. Massey*, 11-358 (La. App. 5 Cir. 3/27/12), 97 So.3d. 13.

causes." When counsel for the defendant was asked if there was anyone else for cause, she said, "No, Judge."

On appeal, the defendant argues that Ms. Elien would not require the State to prove guilt beyond a reasonable doubt. The State responds that the defendant did not refer to the State's burden of proof when he challenged Ms. Elien for cause at trial. As noted above with prospective juror Holmes, pursuant to *Clark*, *supra*, *Nelson, supra*, and *Mitchell*, *supra*, the defendant is limited on appeal to arguing the grounds which he stated during trial in his challenge for cause.

When counsel for the co-defendant challenged Ms. Elien for cause, the challenge was "concerning her response to prior convictions." The State responded, "She did state that she wouldn't hold it against them." In denying the challenge, the court pointed out that Ms. Elien "clearly said just because they were guilty of the prior crimess [sic], they weren't guilty of the crime right now. Cause is denied." The defendants did not provide additional reasons as to why Ms. Elien should be challenged for cause.

A review of the above exchange regarding the challenge for cause indicates that the defendant did not raise burden of proof or the State's burden to prove guilt beyond a reasonable doubt, as a basis for Ms. Elien's challenge. Therefore, this ground was not properly preserved for review.

## ASSIGNMENT OF ERROR NUMBER TWO

The trial court erred in denying the motion for severance.

## DISCUSSION

On appeal, the defendant argues that the trial court erred in failing to sever his trial from that of the co-defendant. He contends that he was prejudiced when his co-defendant's attorney alleged that the defendant was the abuser and "counsel argued unequivocally that Mr. Burciaga was the monster who sexually assaulted A.H., not someone named David, who may not even exist." The State responds

that the Motion to Sever was properly denied as an unsupported allegation of antagonistic defenses. The State also asserts that the defendant did not make an objection to his co-defendant's statements in closing; therefore, this issue is not preserved for review pursuant to La. C.Cr.P. art. 841(A).

La. C.Cr.P. art. 704 provides the following regarding severance:

Jointly indicted defendants shall be tried jointly unless:

(1) The state elects to try them separately; or

(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.

Whether justice requires a severance must be determined by the facts of each case. *State v. Hayden*, 09-954 (La. App. 5 Cir. 5/11/10), 41 So.3d 538, 543. A defendant is not entitled to a severance as a matter of right, but the decision is one resting within the sound discretion of the trial court. *State v. Prudholm,* 446 So.2d 729, 741 (La. 1984); *State v. Jackson,* 03-883 (La. App. 5 Cir. 4/27/04), 880 So.2d 841, 851, *writ denied*, 04-1399 (La. 11/8/04), 885 So.2d 1118. The ruling on a motion to sever is within the sound discretion of the trial court and will not be overturned unless it is manifestly erroneous and injurious to the defendant. *State v. Tennart*, 352 So.2d 629, 634 (La. 1977), *cert. denied*, 435 U.S. 945, 98 S.Ct. 1529, 55 L.Ed.2d 543 (1978); *State v. Molette*, 17-697 (La. App. 5 Cir. 10/17/18), 258 So.3d 1081, 1089, *writ denied*, 18-1955 (La. 4/22/19), 268 So.3d 304.

A severance is necessary if the defenses of the co-defendants are mutually antagonistic to the extent that one co-defendant attempts to blame the other, causing each defendant to defend against both his co-defendant and the State. *Prudholm,* 446 So.2d at 741; *State v. Hicks*, 17-696 (La. App. 5 Cir. 10/17/18), 258 So.3d 1039, 1049, *writ denied*, 18-1938 (La. 4/15/19), 267 So.3d 1123. The defendant bears the burden of proof in a motion to sever. *State v. Coe*, 09-1012 (La. App. 5 Cir. 5/11/10), 40 So.3d 293, 301, *writ denied*, 10-1245 (La. 12/17/10),

51 So.3d 17. A "mere unsupported allegation" that defenses will be antagonistic is not sufficient to require a severance. *Prudholm, supra*; *Hicks*, *supra*. Furthermore, the fact that each defendant has pointed a finger at the other does not make defenses automatically antagonistic. Prejudice must be shown if defendants are to receive separate trials. *State v. Williams,* 416 So.2d 914, 916 (La. 1982).

In *State v. Holmes*, 12-579 (La. App. 5 Cir. 5/16/13), 119 So.3d 181, 197, *writ denied*, 13-1395 (La. 1/10/14), 130 So.3d 318, this Court stated:

> In reviewing a pre-trial motion for severance, the Louisiana Supreme Court provided the following in *State v. Lavigne,* 412 So.2d 993, 997 (La. 1982): "It is incumbent upon us to review the validity of the ruling without regard to whether at trial substantial other evidence was introduced or whether his conviction would have been a certainty irrespective of the joint trial." La. Prac.Crim. Trial Prac. § 14:25 (4th ed.) explains the following regarding the differences in review depending on the timing of the motions for severance:

> …If the motion is made *pretrial* and denied, the appellate court may *not* consider the weight of the evidence or the certainty of the defendant's conviction in a separate trial in assessing the validity of the trial court's ruling. (internal footnotes omitted) (emphasis as found in original).

In the instant case, the Motion to Sever was filed on April 4, 2022, prior to trial, and the defendant alleged "conflicting and antagonistic defenses," but did not elaborate or give details specifying the conflicting and antagonistic defenses. At the hearing on the motion, the court asked if one defendant is going to point the finger at the other defendant, and counsel for the co-defendant responded, "If I have to I will. And I just don't know how this is going to develop. But that is a very big possibility." Counsel for the defendant responded, "I think that very much depends on how it develops. And then I think the strategy will be dependent upon the testimony of the alleged victim… But I do think the defenses are going to diverge and potentially be antagonistic."

In written reasons for denying the motion, the trial court stated:

> At the hearing on defendants' Motion to Sever, it was argued: that Mr. Burciaga, a relative of A.H. who resided therewith, is alleged

to have regularly committed sexual battery upon A.H. during the period of time alleged in the bill of information; Mr. Gabriel, a family acquaintance, is alleged to have committed sexual battery upon A.H. on a single occasion during the period of time alleged in the bill of information; it is not alleged that the defendants acted in concert or aided each other, or had any knowledge of the acts of the other; at trial, Mr. Gabriel will argue that A.H. is confused and/or mistaken about Mr. Gabriel due to the multiple batteries committed by Mr. Burciaga.

Based on the foregoing, the Court does not have a sufficient factual basis to determine if the defendants' defenses will be mutually antagonistic or prejudicial. The burden is on the mover, and while the matter was well argued, no evidence was presented.
For the foregoing reasons, IT IS HEREBY ORDERED that the defendants' Motion to Sever is hereby DENIED.

This Court has consistently found that the trial court does not err by denying a motion to sever where defendants allege mere unsupported allegations that defenses will be antagonistic. In *Holmes*, *supra,* the defendant argued in his motion to sever that he "believed his co-defendant would present a defense directly contradictory to his defense, suggesting that they would be antagonistic defenses." This Court held that the defendant failed to offer evidence in support of his pre-trial motions for severance, he only made general representations that the defenses presented at trial would be antagonistic, and the conclusory statements alone were insufficient to satisfy his burden regarding the severance. *Id.* Similarly, in *Coe*, *supra*, 40 So.3d at 302, both defendants denied any involvement in the incident and did not blame the other. This Court found that the defendant failed to demonstrate how he was prejudiced by the denial of the severance. In *State v. Williams*, 16-417 (La. App. 5 Cir. 8/30/17), 227 So.3d 371, 395, *writ denied,* 17-1663 (La. 9/14/18), 252 So.3d 483, neither the defendant nor the co-defendant blamed one another for the respective crimes for which they were charged. This Court found that the defendant had not shown how he was prejudiced by the lack of a severance.

In this case, during the hearing on the Motion to Sever, both defense counsels alleged that the defenses were possibly and potentially antagonistic. In denying the motion, the court stated in part, "The burden is on the mover, and while the matter was well argued, no evidence was presented." Our review of the transcript of the motion hearing indicates that the trial court was correct - no evidence was presented to support the statements that the defenses were "possibly and potentially antagonistic." Accordingly, we find that the defendant's unsupported allegation that the defenses would be antagonistic was not sufficient to require a severance, and the trial court did not err by denying the Motion to Sever.

In addition, on appeal the defendant alleges that he was prejudiced when the co-defendant's counsel alleged that the defendant was the abuser and said, "There's a monster. I'm going to tell you, there's a monster, okay. I'm not going to elaborate on that; but there's a monster, right? And who is David? Is there even a David?"

The transcript indicates that during closing argument, the co-defendant's counsel stated:

> Look, I get it. Their investigation is supposed to get the bad guy, right? That's what they're supposed to do, right? You send them to the CAC. You send them to the doctor, and you make sure you got the right guy. But if you don't have the right guy, where is the right guy?
>
> You know, it seems like their whole process here or their whole presentation to you is who is David. Who is David? We don't know if there is a David. First of all, we don't know if there is a David. **There's a monster. I'm going to tell you there's a monster, okay. I'm not going to elaborate on that; but there's a monster, right?** And who is David? Is there even a David? One thing we do know, for sure, one thing we do know for sure that is not the David. We know that is not the David. We know that because I.H. looked in this courtroom and said no, he's not here. And A.H. had looked around the courtroom and said no, he's not there. And the investigator, lead investigator said, I don't know how we got the name of David Gabriel.

There was no objection by the defendant to the above statements regarding a monster. As argued by the State on appeal, the contemporaneous objection rule applies to closing argument. In *State v. Hilliard*, 52,652 (La. App. 2 Cir. 8/14/19), 278 So.3d 1065, *writ denied*, 19-1701 (La. 7/24/20), 299 So.3d 68, the defendant argued that the prosecutor made improper statements during closing argument. Because the defendant's trial counsel did not make a contemporaneous objection to the alleged improper comment, the court held that the defendant was precluded from raising a claim related to it on appeal. *Id*. at 1081.

La. C.Cr.P. art. 841 provides that "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." This rule has two purposes: (1) to require counsel to call an error to the judge's attention at a time when the judge may correct the error; and (2) to prevent defense counsel from "sitting on" an error and gambling unsuccessfully on the verdict, and later resorting to appeal on an error that might have been corrected at trial. *State v. Ruiz*, 06-1755 (La. 4/11/07), 955 So.2d 81, 87; *State v. Havies,* 22-133 (La. App. 5 Cir. 12/22/22), 355 So.3d 677, 688, *writ denied*, 23-76 (La. 9/19/23), 370 So.3d 463. To preserve the right to seek appellate review of an alleged trial court error, the party alleging the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. *State v. Lyons*, 13-564 (La. App. 5 Cir. 1/31/14), 134 So.3d 36, 40, *writ denied sub nom*. *State ex rel*. *Lyons v. State*, 14-481 (La. 11/7/14), 152 So.3d 170. Accordingly, this alleged error was not preserved for appellate review.

Moreover, the co-defendant's statements do not allege that the defendant was the "monster" or the abuser. When read in context, the co-defendant was conceding that someone, a monster, committed the offenses, and the monster was not "David." Furthermore, even if the co-defendant had pointed a finger at defendant, it does not make the defense automatically antagonistic. *Holmes*, *supra*.

In *Williams*, *supra,* 416 So.2d 914, each defendant blamed the other defendant, and the court held, "In a sense, Williams' defense is antagonistic to Barnes', and vice versa, inasmuch as each pointed a finger at the other, but this does not make the defenses automatically antagonistic. Prejudice must be shown if the defendants are to receive separate trials." *Id*. at 915-16.

In sum, even if the denial of the motion to sever was properly preserved for appellate review, the defendant has not shown that he was prejudiced by the denial of the motion to sever, nor has he shown that he was prejudiced by the statements made in closing arguments. This assignment of error lacks merit.

## ERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). The review reveals no errors patent in this case.

## CONCLUSION

For the foregoing reasons, the defendant's conviction of sexual battery of a juvenile under the age of thirteen in violation of La. R.S. 14:43.1, and sixty-five-year sentence as a second felony offender is affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **NOVEMBER 29, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-KA-13

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE NANCY A. MILLER (DISTRICT JUDGE)
MONIQUE D. NOLAN (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          HOLLI A. HERRLE-CASTILLO
                                                                          (APPELLANT)

**MAILED**
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053